Christopher H. Bayley (#010764)
Robert M. Kort (#016602)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: 602-382-6214
Facsimile: (602) 382-6070
Email:        cbayley@swlaw.com
              rkort@swlaw.com
Attorneys for Cynthia Reynoso

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Proceedings Under Chapter 11 |
| AR UTILITY SPECIALISTS, INC., | Case No. 2:05-bk-10489-PHX-GBN |
| Debtor. | **CYNTHIA REYNOSO'S MOTION TO RECONSIDER, AND OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY PETER STROJNIK AS SPECIAL COUNSEL** |
| EIN or SSN: 86-0597466 | |

Cynthia Reynoso ("Ms. Reynoso"), the owner of 49% of the outstanding shares of the

debtor, AR Utility Specialists, Inc. ("AR Utility" or the "debtor"), objects to AR Utility's

Application to Employ Peter Strojnik as Special Counsel (the "Application") and moves the Court

to reconsider and set aside its June 29, 1995 Order granting the Application.[1] Pursuant to 11

U.S.C. § 327(e), Mr. Strojnik may be appointed as special counsel for the debtor only if: (1) such

representation is in the best interest of the estate; and (2) Mr. Strojnik does not represent or hold

any interest adverse to the debtor or the estate with respect to the matter on which he is to be

employed. As set forth below, Mr. Strojnik had a direct financial and proprietary interest in a

proposed merger transaction involving AR Utility that was set aside and enjoined by the State

---

[1]    AR Utility filed the Application on June 28, 2005, and the Court entered its Order the
following day.

Court in the litigation commenced by Ms. Reynoso.  Further, AR Utility has not identified any reason why its bankruptcy counsel, Lewis & Roca, LLP, cannot perform the legal services for which it seeks to employ Mr. Strojnik.

## I.  MR. STROJNIK HAD A DIRECT FINANCIAL INTEREST IN THE UNLAWFUL MERGER TRANSACTION THAT WAS ENJOINED BY THE STATE COURT.

Until May 2005, Peter Strojnik and his wife, Tanya Strojnik, were the 100% owners of Binary Mass Propulsion Systems, Inc. ("Binary Mass"), which was described as a "science/research" company in Binary Mass's 2004 Annual Report.  *See* 2004 Annual Report of Binary Mass, Exhibit 1.  Mr. Strojnik was also the President and sole Director of Binary Mass. *Id.*

Although Binary Mass had no relationship whatsoever to AR Utility, Mr. Strojnik (on behalf of Binary Mass) and Alejandro Reynoso (on behalf of AR Utility) attempted to effectuate a merger between the two corporations that, if implemented, would have deprived Ms. Reynoso of her entire ownership interest in AR Utility and given her a miniscule non-voting interest in Binary Mass that would be purchased at an artificially low price unilaterally selected by Mr. Reynoso. As this Court is aware, the Honorable Peter Reinstein entered a Temporary Restraining Order on May 27, 2005 enjoining AR Utility and Binary Mass from taking any action in furtherance of the proposed merger transaction and ordering AR Utility and Binary Mass to withdraw the merger documents they filed with the Arizona Corporation Commission on May 13, 2005.[2]

In connection with the proposed merger transaction:

- Mr. Strojnik purported to be acting as the Secretary and General Counsel of AR Utility and attended a meeting of AR Utility's Board of Directors at his office on May 12, 2005

---

[2]     In the Application, AR Utility inaccurately states that "on or about May 13, 2005, AR Utility Specialists, Inc. merged with [Binary Mass]."  No such merger ever took place.  The fact that AR Utility and Binary Mass improperly and prematurely filed merger documents with the Arizona Corporation Commission does not mean that the merger took place.  On the contrary, the State Court properly recognized that the purported merger transaction was unlawful and needed to be immediately enjoined.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    where the Board (without notice to Ms. Reynoso or a shareholder vote) purported to approve the

2    proposed merger between AR Utility and Binary Mass.  *See* Exhibit 2.

3         •    Binary Mass executed a three-year contract with CSK Partnership, <u>in which Mr.

4    Strojnik is a partner</u>, whereby Binary Mass agreed to pay CSK Partnership $180,000 per year,

5    plus 25% of the company's annual gross profits before taxes, for unspecified "consulting"

6    services.  *See* Exhibit 3.[3]

7         •    Binary Mass signed a retainer agreement with Peter Strojnik to act as General

8    Counsel for Binary Mass following its purported merger with AR Utility.  *See* Exhibit 4.[4]

9         Further, even after the Court enjoined AR Utility and Binary Mass from taking "any

10   action in furtherance of the merger transaction:"

11        •    Mr. Strojnik continued to hold himself out as the Secretary of AR Utility.

12        •    AR Utility, which never contracted with CSK Partnership, nevertheless paid CSK

13   Partnership pursuant to the contract between CSK Partnership and <u>Binary Mass</u>, including a

14   payment of $15,000 on June 8, 2005.[5]  It appears from AR Utility's latest budget that it plans to

15   continue paying CSK Partnership a monthly fee of $15,000.

16        •    On June 8, 2005, Mr. Strojnik received a payment of $39,000, presumably

17   pursuant to his fee agreement with Binary Mass.  Ms. Reynoso is unaware of any fee agreement

18   between AR Utility and Mr. Strojnik.

19        In sum, Mr. Strojnik had a direct financial and proprietary interest in a merger transaction

20   that the State Court enjoined and, even after the merger transaction was enjoined, has continued

21   _____

22   [3]    Upon information and belief, CSK Partnership is an acronym for Cabreja, Strojnik, and
     Kummer.

23   [4]    Although the version of the retainer agreement produced by Binary Mass was unsigned,
24   the May 13, 2005 Board of Directors' Minutes indicate that the agreement was signed.

25   [5]    Although AR Utility has improperly denied Ms. Reynoso access to its financial and
     accounting records, Ms. Reynoso believes that, separate and apart from AR Utility's $15,000
     payment to CSK Partnership, AR Utility also paid the principals of CSK Partnership wages as
26   employees of AR Utility.

1  to act as an insider of AR Utility and cause AR Utility to pay his partnership (CSK Partnership)

2  excessive fees pursuant to a contract to which AR Utility is not even a party.  Accordingly, it

3  would be improper for Mr. Strojnik to serve as special counsel for AR Utility in this proceeding.

## II.    AR UTILITY HAS NOT IDENTIFIED ANY COMPELLING REASON FOR APPOINTING MR. STROJNIK AS SPECIAL COUNSEL.

6           Section 327(e) does not authorize the employment of counsel to represent the estate

7  generally, but rather for a specified special purpose.  The appointment of special counsel under

8  section 327(e) typically occurs "when the debtor is involved in complex litigation, and changing

9  attorneys in the middle of the case after the bankruptcy case has commenced would be

10 detrimental to the progress of other litigation."  11 U.S.C. § 327, Legislative History to Section

11 327.

12          In the Application, AR Utility states that, as special counsel, Mr. Strojnik will perform

13 "general corporate counsel services" for the debtor, without providing any detail as to the nature

14 of such services or why they cannot be performed by the debtor's bankruptcy counsel, Lewis &

15 Roca, L.L.P.

16          AR Utility also states that Mr. Strojnik may provide litigation services in connection with

17 "potential claims" against Ms. Reynoso and two former senior-level officers of AR Utility,

18 Eduardo Alonzo and Ruben Hinojos.  To the extent that AR Utility determines that it has valid

19 claims to pursue in bankruptcy court against Ms. Reynoso, Mr. Alonzo or Mr. Hinojos, Lewis &

20 Roca (or, if necessary, independent counsel with no proprietary or financial interest in the claims)

21 can certainly represent AR Utility in connection with such claims.  No litigation (much less

22

23

24

25

26

Snell & Wilmer
— L.L.P. —
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   "complex litigation") is ongoing, and AR Utility would not need to change counsel in the middle
2   of the case if it elected to prosecute its "potential claims."[6]

3   **III.    CONCLUSION**

4          Based upon the foregoing reasons, Ms. Reynoso respectfully requests that the Court set
5   aside its June 29, 1995 Order granting AR Utility's Application to Employ Peter Strojnik As
6   Special Counsel.

7          DATED this 14th day of July, 2005.

8                                                SNELL & WILMER L.L.P.

9

10                                      By  /s/ CHB - 010764
                                              Christopher H. Bayley (#010764)
11                                            Robert M. Kort (#016602)
                                              One Arizona Center
12                                            400 E. Van Buren
                                              Phoenix, AZ  85004-2202
13                                            Attorneys for Cynthia Reynoso

14   COPY of the foregoing e-mailed this
15   14th day of July, 2005, to:

16   Henk Taylor                          htaylor@lrlaw.com
     Scott K. Brown                       sbrown@lrlaw.com
17   Doyle S. Byers                       dbyers@lrlaw.com
     Lewis and Roca LLP
18   40 N. Central Ave.
     Phoenix, AZ 85004-4429
19

20
     /s/ Mary J. Minnick
21   1696510.1

22   _____
     [6]    In the Application, AR Utility indicates that Mr. Strojnik may provide services in
23   connection with a lawsuit entitled *ARUSI, Inc. v. Alonzo, et al.*, Maricopa County Superior Court,
     No. CV2005-008107.  First, the debtor was never a party to that lawsuit.  Second, the plaintiff in
24   that lawsuit, Binary Mass (which purportedly changed its name to ARUSI, Inc.) voluntarily
     dismissed the lawsuit on June 22, 2005.  While Mrs. Reynoso's lawsuit against AR Utility and
25   others (*Reynoso v. Reynoso, et al.*, Maricopa County Superior Court, No. CV2005-08557) is
     pending, Mrs. Reynoso's claims against AR Utility in that proceeding are subject to the automatic
26   stay under 11 U.S.C. § 362(a).

Snell & Wilmer
— L.L.P. —
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

# EXHIBIT 1



STATE OF ARIZONA
# CORPORATION COMMISSION
## CORPORATION ANNUAL REPORT
## & CERTIFICATE OF DISCLOSURE

AZ Corp. Commission

01020237

DUE ON OR BEFORE   05/01/2004   FY03-04   FILING FEE

The following information is required by A.R.S. §§10-1622 & 10-11622 for all corporations organized pursuant to Arizona Revised Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §§10-121.A. & 10-3121.A. YOUR REPORT MUST BE SUBMITTED ON THIS ORIGINAL FORM. Make changes or corrections where necessary. Information for this report should reflect the current status of the corporation. See instructions on page 4 for proper format.

1.   -1022739-8
BINARY MASS PROPULSION SYSTEMS, INC.
145 W GLENDALE
PHOENIX, AZ 85012

RECEIVED
JUL 13 2004
ARIZONA CORP COMMISSION
CORPORATIONS DIVISION

RECEIVED
APR 29 2004
ARIZONA CORP COMMISSION
CORPORATIONS DIVISION

Business Phone: _____   (Business phone is optional)
State of Domicile: ARIZONA   Type of Corporation: _____

2.   Statutory Agent: _____
Mailing Address: _____
City, State, Zip: PHOENIX, AZ 85012

Physical Address, if Different.
Physical Address: _____
City, State, Zip: _____



ACC USE ONLY
Fee: $ _____
Penalty: $ _____
Reinstate: $ _____
Expedite: $ _____
Rec'd $ _____

**Use this box only if appointing a new Statutory Agent**

If appointing a new statutory agent, the new agent MUST consent to that appointment by signing below.

I, (individual or for, Corporation or limited liability company) having been designated the new Statutory Agent, do hereby consent in this appointment until my removal or resignation pursuant to law.

_____
Signature of new Statutory Agent

_____
Printed Name of new Statutory Agent

3.   Second Mail Address: _____

RECEIVED
SEP 16 2004
ARIZONA CORP COMMISSION
CORPORATIONS DIVISION

(Foreign Corporations are NOT REQUIRED to complete this section)

4.   Check the one category below which best describes the CHARACTER OF BUSINESS of your corporation.

BUSINESS CORPORATIONS                         NON-PROFIT CORPORATIONS
(lists of categories)

**5. CAPITALIZATION:** (Business Corporations and Business Trusts are REQUIRED to complete this section.)  IR8789.8

Business trusts must indicate the number of transferable certificates held by trustee evidencing their beneficial interest in the trust estate. Please examine the corporation's original Articles of Incorporation for the amount of shares authorized. Review all corporation amendments to determine if the original number of shares has changed. Examine the corporation's minutes for the number of shares issued.  **Please Print or Type Clearly.**

Number of Shares/Certificates Authorized.          Class          Series Within Class (if any)

_____10,000,000_____     _Common Stock_     _____

Number of Shares/Certificates Issued          Class          Series Within Class (if any)

_0  NONE_

**6. SHAREHOLDERS:** (Business Corporations and Business Trusts are REQUIRED to complete this section.)

List shareholders holding more than 20% of any class of shares issued by the corporation, or having more than a 20% beneficial interest in the corporation. **Please Type or Print Clearly.**

NONE ☒     Name: _____     Name: _____

              Name: _____     Name: _____

**7. OFFICERS: Please Type or Print Clearly. You Must List at Least One.**

Name: _Peter Strojnik_          Name: _____

Title: _Pres._               Title: _____

Address: _3030 N. Central #1401_     Address: _____

_Phoenix AZ 85012_

Date taking office: _4/29/2002_     Date taking office: _____

Name: _____          Name: _____

Title: _____          Title: _____

Address: _____        Address: _____

Date taking office: _____     Date taking office: _____

**8. DIRECTORS: Please Type or Print Clearly. You Must List at Least One.**

Name: _Peter Strojnik_          Name: _____

Address: _3030 N. Central #1401_     Address: _____

_Phoenix AZ 85012_

Date taking office: _4-29-02_     Date taking office: _____

Name: _____          Name: _____

Address: _____        Address: _____

Date taking office: _____     Date taking office: _____

Please Enter Corporation Name: _GLORY TIMES CORP./ V_ and _SYSCRM_ _file number_ _1022734_ Page 3

**9. FINANCIAL DISCLOSURE (A.R.S. §10-11622.A.9)**                            - 1028739-8

Nonprofit corporations must attach a financial statement including a balance sheet, income/expense statement, or other financial disclosure. All other kinds of corporations are exempt from filing a financial disclosure.

**9A. MEMBERS (A.R.S. § 10-11622.A.5)**

[Only Nonprofit Corporations must answer this question.]     This corporation DOES ☐ DOES NOT ☐ have members.

**10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1638.A.3 & 10-11623.A.7)**

Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and/or person controlling or holding more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation been: [underlined portion pertains to business corporations only]

1. Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the seven year period immediately preceding the execution of this certificate?
2. Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of this certificate?
3. Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the seven year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order involved the violation of:
   (a) fraud or registration provisions of the securities laws of that jurisdiction; or
   (b) the consumer fraud laws of that jurisdiction; or
   (c) the antitrust or restraint of trade laws of that jurisdiction?

[One box must be marked]   YES ☐   NO ☒

If "YES", the following information must be submitted as an attachment to this report for each person subject to one or more of the actions stated in items 1. through 3. above.

1. Full name and prior names used.
2. Full birth name.
3. Present home address.
4. Prior addresses (for ten years preceding 7 year period).
5. Date and location of birth.
6. Social Security Number.
7. The nature and description of each conviction or judicial action, the date and location, the court and public agency involved, and the file or cause number of the case.

**11. STATEMENT OF BANKRUPTCY, RECEIVERSHIP or CHARTER REVOCATION (A.R.S. §§10-1656.D.2, 10-3962.D.2, 10-1623 & 10-11623)**

A) Has the corporation filed a petition for bankruptcy or appointed a receiver?   [One box must be marked]   YES ☐   NO ☒

B) Has any person serving as an officer, director, trustee or incorporator of the corporation served in any such capacity OR held or controlled over 20% of the issued and outstanding common shares, or 20% of any other proprietary, beneficial or membership interest in any corporation which have been placed in bankruptcy, receivership or had its charter revoked, or administratively or judicially dissolved by any state or jurisdiction?

[underlined portion pertains to business corporations only]   [One box must be marked]   YES ☐   NO ☒

If "YES" to A and/or B, the following information must be submitted as an attachment to this report for each person subject to the statement above.
1. The names and addresses of each corporation and the person or persons involved. (e.g. officer, director, trustee or major stockholder)
2. The state in which each corporation was a) incorporated b) transacted business.
3. The dates of corporate operation.
4. If any licensed person (item 3.4) has been involved in any other bankruptcy proceeding within the past year, the name and address of each corporation.
5. Case, Case number and Court where the bankruptcy was filed or receiver appointed.
6. Name and address of court appointed receiver.

**12. SIGNATURES   Annual Reports must be signed and dated by at least one duly authorized officer or they will be rejected.**

I declare, under penalty of law that all corporate income tax returns required by Title 43 of the Arizona Revised Statutes have been filed with the Arizona Department of Revenue. I further declare under penalty of law that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.

Name: _Denie P.S._   Date _4/30/2004_ Date _7-12-04_

Signature _Tanya Stronik_           Signature _Petra Stronik_

Title _Treasurer_           Title _President_

(Signature(s) must be duly authorized corporate officer(s) listed in section 7 of this report.)

# EXHIBIT 2

# MINUTES OF THE SPECIAL MEETING OF THE BOARD OF DIRECTORS
## OF
## AR UTILITY SPECIALISTS, INC.

### May 12, 2005

Pursuant to a Notice of the Special Meeting of the Board of Directors, the Board of Directors of the Company convened at the offices of Peter Strojnik, P.C., 3030 N. Central Avenue, Suite 1401, Phoenix, Arizona, at 12:00 noon on May 12, 2005.

The meeting was called to order by Alejandro Reynoso as the sole director and the President of the Company, pursuant to Section 3.04 of the First Amended And Restated Bylaws Of AR Utility Specialists, Inc. who acted as the Chairman. The President of the Corporation, Raymond Cabreja; the Treasurer of the Corporation, Thomas Kummer; and the Secretary – General Counsel of the Corporation, Peter Strojnik, were present.

The chairman declared that forum was present.

A discussion regarding the advisability of a proposed merger with Binary Mass Propulsion Systems, Inc. (whose name is to be amended to ARUSI, Inc. by the time the proposed Articles of Merger shall be filed with the Corporation Commission) and the terms thereof, were discussed. A proposal was made that the Corporation adopt a plan of merger as set forth in Attachment "1" hereto. Upon motion made, seconded, and a vote being taken thereon, it was:

> RESOLVED that the Plan Of Merger set forth in Attachment "1" be adopted by the Corporation with the majority consent of the shareholders.

Additional discussion was followed whether the Board of Directors should make recommendation for the acceptance of the proposed merger to the shareholders of the Corporation. Based on the potential conflict of interest, it was:

> RESOLVED that the Board of Directors shall make no recommendation regarding the proposed merger. Instead, the terms of the merger shall be submitted to the majority shareholders of the corporation for approval or rejection.

There being no other business before the Board, the meeting was, upon motion duly made and seconded, adjourned.

DATED this 12th day of May, 2005.

_____

Peter Strojnik
Secretary of the Meeting

## ATTACHMENT "1"

## PLAN OF MERGER

1. The name of each corporation planning to merge into ARUSI, Inc. is AR Utility Specialists, Inc.

2. The name of the surviving corporation is ARUSI, Inc.

3. The terms and conditions of the merger are as follows: The majority of the shareholders of AR Utility Specialists, Inc. shall approve a merger between ARUSI, Inc. and AR Utility Specialists, Inc. whereby the entire corporate entity of AR Utility Specialists, Inc. shall merge with and become one with ARUSI, Inc., and the separate entity of AR Utility Specialists, Inc. shall cease to exist.

4. All outstanding shares issued by ARUSI, Inc. shall be cancelled and shall be null and void.

5. There are 1,400 shares of issued and outstanding shares of stock of AR Utility Specialists, Inc. 900 shares, or 64.29% were owned at the time of the merger by Alejandro Reynoso and 500 shares, or 35.71% by Cynthia Reynoso. All outstanding shares of AR Utility Specialists, Inc. shall become null and void. ARUSI, Inc. shall issue 10,000 shares of common stock of ARUSI, Inc. to Alejandro Reynoso, and 500,000 shares of the preferred, non-voting stock of ARUSI, Inc. to Cynthia Reynoso. All or any portion of the shares of preferred, non-voting stock issued pursuant to the Plan of Merger shall be fully redeemable by ARUSI, Inc. at any time within 2 years of the date of the merger at the fair market value of each share as of the date of the merger with interest thereon at the rate of SIX PERCENT (6%) per annum from the date of the merger to the date of redemption. Redemption by ARUSI, Inc. shall be effective upon the tender of the redemption price, and upon tender, ARUSI, Inc. shall be entitled to show the transfer of the shares on its stock ledger books. The Corporation has made a determination that the fair market value of the aggregate of preferred non-voting shares on the date of the merger is $500,000, or $1.00 per share.

6. In the event that the holder of redeemable preferred non-voting shares disagrees with the valuation of the stock as of the date of the merger, the holder shall have the right to petition the Court of competent jurisdiction as provided by law. The final judgment of a court of competent jurisdiction shall be binding on the Corporation and the holder of redeemable shares.

# EXHIBIT 3

## Consulting Agreement

THIS CONSULTING AGREEMENT (the "Agreement") is made effective the 13th day of May ("Effective Date") by and between CSK Partnership, an Arizona Partnership ("Consultant") and ARUSI, Inc., an Arizona Corporation, ("Company").

WHEREAS, Consultant has personnel with experience in company management, executive guidance, and systems management ("Services"); and

WHEREAS, Company desires to retain Consultant and Consultant Personnel (hereafter, the term "Consultant" shall cumulatively mean CSK Partnership and CSK Partnership Personnel") to advise and assist the Company in company management, executive guidance, and systems management; and

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and Consultant agree as follows:

1) **RELATIONSHIP WITH CORPORATE OFFICER POSITIONS:** The Company affirms that CSK Partnership Personnel includes Raymond Cabreja and Thomas Kummer, who are, on the Effective Date hereof, President and Treasurer of the Company, respectively. The parties agree that the activities of Messrs. Cabreja and Kummer as President and Treasurer of the Company, respectively, are separate and apart from the Services provided pursuant to this Agreement. To the extent that the activities of Messrs. Cabreja and Kummer as President and Treasurer of the Company overlap the Services provided pursuant to this Agreement, it shall be conclusively deemed that Services were provided pursuant to this Agreement, and that the terms and conditions of this Agreement governs the provision of such Services. The compensation for all Services performed by Consultant shall be paid pursuant to the terms of this Agreement including services rendered as officers of the Company.

2) **ENGAGEMENT:** Consultant shall provide services as follows:

a) Executive and management Services shall be provided through Raymond Cabreja; and

b) Systems management Services shall be provided through Thomas Kummer.

3) **TERM:** This Agreement shall have an initial term of three (3) years ("Initial Term"), commencing with the Effective Date. At the conclusion of the Initial Term this Agreement will automatically be extended on an annual basis (the "Extension Period") unless either Consultant or the Company shall deliver to the other party written notice terminating the Agreement. Any notice to terminate given hereunder shall be writing and shall be delivered at least thirty (30) days before the end of the Initial Term or any subsequent Extension Period.

4) **TIME AND EFFORT OF CONSULTANT:** Consultant shall allocate such time and effort as it deems necessary in its good faith discretion to provide the Services. The particular amount of time may vary from day to day or week to week.

5) **CONSIDERATION:** Company agrees to pay Consultant a fee for Services ("Consultant Fee") as follows:

a) Fifteen Thousand Dollars ($15,000) payable monthly plus an amount reasonably required for housing in or near Tempe, Arizona for so long as such housing is required to perform the services hereunder; plus

b) Twenty-Five Percent (25%) of the gross profit before taxes of the Company fiscal years 2005 through 2010 which exceeds the gross profit before taxes for fiscal year 2004 calculated based upon GAAP Accounting principals less the amount received pursuant to subparagraph (a) of this paragraph to be paid monthly based upon internally generated data subject to adjustment annually based upon fiscal year calculations provided by an independent Certified Public Accountant employed by the Company; plus

c) Company shall provide Raymond Cabreja and Thomas Kummer with such benefits as are commensurate with the benefits offered to Employees of Company effective as of the Effective Date hereof, or hereinafter adopted by the Company, including participation in

insurance, vacation, disability and other benefit programs as officers of the Company for so long as they continue to serve as officers.

6) **COSTS AND EXPENSES:** All out-of-pocket expenses incurred by Consultant in the performance of the Services shall be paid by the Company, or Consultant shall be reimbursed if paid by Consultant on behalf of the Company, within ten (10) days of receipt of written notice by Consultant, provided that the Company must approve in advanced all such expenses in excess of $1,500.

7) **PLACE OF SERVICES:** The Services provided by Consultant hereunder will be performed at the Company premises at 2840 South 36th Street Phoenix, Arizona 85034, or at such other place as the Consultant chooses in the exercise of good faith judgment and discretion. Company shall provide office space, telephone, computer and internet connection, and such administrative or secretarial staff as Consultant deems reasonably necessary.

8) **INDEPENDENT CONTRACTOR:** Consultant will act as independent contractor in the performance of its duties under this Agreement. Accordingly, Consultant will be responsible for payments of all federal, state, and local taxes on compensation paid under this agreement, including income and social security taxes, unemployment insurance, and any other taxes due relative to Consultant's Personnel, and any and all business license fees as may be required.

9) **NO AGENCY EXPRESS OR IMPLIED:** This Agreement neither expressly nor implied creates a relationship of principal and agent between the Company and Consultant, or employee and employer as between Consultant Personnel and the Company.

10) **TERMINATION:** The Company and Consultant may terminate this Agreement by mutual consent. Absent mutual consent, either party may terminate this Agreement with thirty (30) written notice under the following conditions:

a) <u>By the Company:</u>

   i) If during the Initial Term of this Agreement or any Extension Period, Consultant is unable to provide the Services as set forth herein for thirty (30) consecutive business days; or

   ii) If Consultant willfully breaches the duties required to be performed hereunder.

b) <u>By Consultant:</u>

c) If the Company breaches this Agreement or fails to make any payments or provide information required hereunder; or

d) If the Company ceases business or sells a controlling interest to a third party, or agrees to a consolidation or merger of itself with or into another corporation a majority of the shares of which are not owned by the shareholders of the Company as of the date of the merger or consolidation, or sells substantially all of its assets to another corporation, entity or individual except to an entity which is not majority owned by the shareholders of the Company at the date of such sale or an individual who is not a shareholder of the Company at the time of such sale or for a period of five previous years; or

e) At the sole discretion of Consultant, if the Company becomes unable to pay the consideration set forth herein in a timely fashion, the Company becomes insolvent, the a petition in Bankruptcy is filed with respect to the Company, a receiver is appointed for the Company, or such other circumstance which may be reasonably considered as impairing the Company from meeting its obligations hereunder.

11) **INDEMNIFICATION:** Subject to the provisions herein, the Company and Consultant agree to indemnify, defend and hold each other harmless from and against all demands, claims, actions, losses, damages, liabilities, costs and expenses (including without limitation, interest, penalties and attorney's fees and expenses) asserted against or imposed or incurred by either party by reason of or resulting from any action by the other party of this Agreement.

**12) REMEDIES:** Consultant and the Company acknowledge that in the event of a breach of this Agreement by either party, money damages would be inadequate, and the non-breaching party would have no adequate remedy at law. Accordingly, in the event of any controversy concerning the rights or obligations under this agreement, such rights or obligations shall be enforceable in a court of equity by a decree of specific performance. Such remedy, however, shall be cumulative and nonexclusive, and shall be in addition to any other remedy to which the other parties may be entitled.

**13) MISCELLANEOUS:**

a) <u>Subsequent Events.</u>    Consultant and the Company each agree to notify the other party if, subsequent to the date of this Agreement, either party incurs obligations which could compromise its efforts and obligations under this Agreement.

b) <u>Amendment.</u> This Agreement may be amended or modified at any time and in any manner only by an instrument in writing executed by the parties hereto.

c) <u>Further Actions and Assurances.</u>    At any time and from time to time, each party agrees, at its or their expense, to take actions and to execute and deliver documents, as may be reasonable necessary to effectuate the purpose of this Agreement.

d) <u>Waiver.</u>    Any failure of any party to this Agreement to comply with any of its obligations, agreements, or conditions hereunder may be waived in writing by the party to whom such compliance is owed. The failure of any party to this Agreement to enforce at any time any of the provisions of this Agreement shall in no way be construed to be waived o any such provision or a waiver of the right of such party thereafter to enforce each and every such prevision. No waiver of any breach of or noncompliance with this Agreement shall be held to be waiver of any other or subsequent breach or noncompliance.

e) <u>Assignments.</u>    Neither this Agreement nor any right created by it shall be assignable by either party without the prior written consent of the other.

f) <u>Notices.</u>  Any notice or other communications required or permitted by this agreement must be in writing and shall be deemed to be properly given when delivered in person to an officer of the other party; when deposited in the United States mails for transmittal by certified or registered mail, postage prepaid; when deposited with a public telegraph company for transmittal; or when sent by facsimile transmission, provided that the communications is address:

    (i)    In the case of the Company:

Alejandro Reynoso
2840 South 36th Street
Phoenix, Arizona 85034

    (ii)    In case of the Consultant:

CSK Consulting
3030 N. Central Avenue, Suite 1401
Phoenix, Arizona 85012

Or to such other person or address designated in writing by the Company or Consultant to receive notice.

g) <u>Headings.</u>  The section and subsection headings in this Agreement are inserted for convenience only shall not affect in any way the meaning or interpretation of this Agreement.

h) <u>Governing Law.</u>  This Agreement was negotiated in and being contracted for in the State of Arizona, and shall be governed by the laws of the state of Arizona, and the United States of America notwithstanding any conflict-of-law provision to the contrary. The parties hereby consent to the personal jurisdiction of the courts located in the State of Arizona.

i) <u>Binding Effect.</u>  This Agreement shall be binding upon the parties hereto and inure to the benefit of the parties, their respective heirs, administrators, executors, successors, and assigns. The parties hereby warrant and represent to each other that the persons signing this

Agreement on their behalf are fully authorized to bind such party and that all approvals from partners, shareholders, and directors have been obtained to the extent necessary to bind such party.

j) <u>Entire Agreement</u>. This Agreement contains the entire Agreement between the parties hereto and supersedes any and all prior agreements, arrangements, or understandings between the parties relating to the subject matter of this Agreement. No oral understanding, statements, promises, or inducements contrary to the terms of this Agreement exist. No representation, warranties, covenants, or conditions express or implied, other than as set forth herein, have been made by any party. The parties have entered into a Non-Disclosure Non-Competition Agreement of even date which is hereby incorporated herein by reference and shall be considered an integral part of this Agreement.

k) <u>Severability</u>. If any part of this agreement is deemed to be unenforceable the balance the Agreement shall remain in full force and effect.

l) <u>Counterparts</u>. A facsimile, telecopy, or other reproduction of this Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, by one or more parties hereto and such executed copy may be delivered by facsimile or similar instantaneous electronic transmission device pursuant to which the signature of or on behalf of such party can be seen. In an event, such execution and delivery shall be considered valid, binding and effective for all purposes. At the request of any party hereto, all parties agree to execute an original of this agreement as well as any facsimile, telecopy or other reproduction hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date above written.

ARUSI, INC.

By: Alejandro Reynoso
Chairman Of The Board and Chief Operating Officer

CSK PARTNERSHIP

By: Raymond Cabreja
General Partner

# EXHIBIT 4

# FEE AGREEMENT

## ATTORNEY, CLIENT AND THE CLAIM

ARUSI, Inc. (Formerly AR Utility Specialists, Inc.) ("Client") retains Peter Strojnik, P.C. ("Attorney") to render legal services as the General Corporate Counsel.

## ATTORNEY'S PROMISE

The Attorney agrees to undertake said representation and to act with reasonable diligence and promptness on behalf of the Client.

## ATTORNEY'S FEE, RETAINER AND BILLING

Attorney's hourly fee is **$325.00**. At the end of each month, or other reasonable period, Attorney shall e-mail to Client a Statement of Account. Client understands that the **minimum billable time period for a task is 0.30 hours**, irrespective of the actual time spent performing a task. Attorney's Statement of Account shall be delivered to client by e-mail or other prompt means. The balance, if any, is due upon receipt, but in no event later than 30 days following the receipt of the Statement of Account. Client grants to Attorney the right under the terms of this Agreement to withdraw from further representation in the event the Statement of Account is not paid within 30 days of receipt.

## COSTS AND EXPENSES

All reasonable costs and expenses incurred in representation of Client shall be borne and paid by Client. All costs in excess of $1,000 shall be first cleared with Client prior to being incurred. Client will reimburse Attorney for any such costs and expenses which may be incurred by Attorney. Such costs include, but are not limited to, expert witnesses, reporter's depositions and transcripts, investigations, court filings, process service and charges for ancillary services and expenses, mailing, messenger services, copying, preparation of exhibits and travel. Costs and expenses are payable at the time of the billing at the end of each month of representation.

## ASSOCIATION OF COUNSEL AND REFERRAL

Client understands that Attorney's background in commercial litigation and general corporate governance. Attorney shall have the right to associate counsel with respect to litigation or other matters that may fall outside the expertise of Attorney, at Attorney's discretion exercised in good faith, or to refer such matters to outside counsel.

## WITHDRAWAL FROM REPRESENTATION

Attorney may cancel this Agreement and withdraw from representation of Client if Client fails to reasonably assist and cooperate in the preparation of the Client's case, or if it becomes, in the good faith judgment of Attorney, improper, illegal, unethical, or

economically imprudent to further pursue Client's claims. Attorney may also withdraw from representation if timely payment for fees is not received as indicated above. In the event of a withdrawal, Client shall remain liable to Attorney for costs and hourly fee earned up to the time of the withdrawal.

If any disagreement or dispute should develop regarding the fee to be paid to the Attorney by the Client, either the Client of the Attorney may petition for arbitration of the disagreement or dispute to the Committee of the State Bar of Arizona on arbitration of fee disputes; however, both the Client and the Attorney must consent to such arbitration.

**CLIENT HAS BEEN ENCOURAGED BY ATTORNEY TO SEEK INDEPENDENT LEGAL ADVICE AND OPINION REGARDING THIS FEE AGREEMENT, AND THAT CLIENT HAS HAD THE OPPORTUNITY TO DO SO. BY EXECUTING THIS AGREEMENT, CLIENT ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE TERMS THEREOF AND HAVING RECEIVED A COPY.**

By executing this Agreement, Client acknowledges having read and understood the terms thereof; that he has initialed each paragraph above; and that (s)he received a copy of the executed agreement.

**ARUSI, INC.**


_____            DATE:_____
By: Raymond Cabreja
President


**PETER STORJNIK, P.C.**


_____            DATE:_____
Peter Strojnik
President