```
 1                UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF ARIZONA
 2

 3   _____)
                                        )
     In re:                             )
 4                                      )
     AR UTILITY SPECIALISTS, INC.   CH. 11  )   2:05-bk-10489-GBN
 5                                      )
     CONTINUED STATUS HEARING RE: LIMITED   )
 6   USE OF CASH COLLATERAL (FR. 06-14 &    )
     6-23)                              )
 7   _____)

 8                                U.S. Bankruptcy Court
                                  230 N. First Avenue, Suite 101
                                  Phoenix, AZ 85003
 9

                                  June 30, 2005
10                                10:22 a.m.

11        BEFORE THE HONORABLE GEORGE B. NIELSEN, JR., Judge

12   APPEARANCES:

13   For the Debtor:              Scott K. Brown
                                  LEWIS & ROCA, LLP
14                                40 N. Central Ave., #1900
                                  Phoenix, AZ 85004-4429
15
     For the U.S. Trustee:        Jonathan Hess
16                                OFFICE OF THE U.S. TRUSTEE
                                  230 N. First Avenue, Suite 204
17                                Phoenix, AZ 85003

18   For JP Morgan Chase Bank:    Daniel P. Collins
                                  COLLINS MAY POTENZA BARAN
19                                & GILLESPIE
                                  2210 Bank One Center
20                                201 N. Central
                                  Phoenix, AZ 85004-0022
21
     For Merchants Bonding:       Hank E. Pearson
22                                MANN BERENS & WISNER
                                  2929 N. Central, #1600
23                                Phoenix, AZ 95012-2760

24

25   Proceedings recorded by electronic sound technician, Stacey
     Pavese; transcript produced by A/V Tronics, Inc.
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 861-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 1 of 15

1          THE CLERK:  05-10489, AR Utility Specialists.

2          THE COURT:  I'll take the appearances in AR

3     Utilities.

4          MR. BROWN:  Good morning, Your Honor.  Scott Brown

5     here on behalf of AR Utility Specialists, Inc., the Debtor.

6          MR. PEARSON:  Good morning, Your Honor.  Hank Pearson

7     appearing on behalf of Merchants Bonding Company.

8          MR. HESS:  Good morning, Your Honor.  Jonathan Hess

9     on behalf of the US Trustee.

10          MR. COLLINS:  Good morning, Judge.  Dan Collins on

11     behalf of JP Morgan Chase Bank.

12          THE COURT:  Good morning, gentlemen.  Continued

13     hearing; let's see what the status is.  Mr. Brown?

14          MR. BROWN:  Good morning, Your Honor.  I believe

15     there's two matters set for today's hearing.  The first is a

16     continued hearing on the use of cash collateral; and the second

17     is an expedited hearing on a motion to pay certain pre-petition

18     premiums on insurance policies that the company has.

19          On the first, the continued hearing on the cash

20     collateral, we had hoped to have a final cash collateral order

21     worked out by today and a budget for six, you know, months

22     worked out into the future.  Unfortunately, we aren't quite

23     there yet, and we're still going back and forth on drafts of

24     the final order.  And we're still going back and forth on the

25     budget.  And just -- the primary concern here for both the

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 665-3555

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 2 of 15

1    bonding company and for JP Morgan, the bank, is the bonding

2    company doesn't want proceeds from bonded projects, you know,

3    used for non-bonded projects.  And the bank doesn't want to use

4    its cash collateral that it has a first lien that's not

5    equitably liened by the -- by Merchant's lien, to be used for

6    bonded projects.  So what we're trying to do is figure out a

7    way to keep the two -- you know, divisions of the company so to

8    speak, separate: the construction side that uses the bonded

9    projects -- that does the bonded projects, and then the civil

10   engineering and the environmental side of the company that does

11   -- that doesn't work on bonded projects.  And so the parties

12   could keep those separate, they can protect their interests in

13   the cash that we have and in the way that we use it.

14         And it's just logistically difficult to -- you know,

15   we have to figure out, you know, where the dollars are coming

16   from, where they're going; and there's a lot of G&A that kind

17   of is used for both sides of the company, and we have to figure

18   allocation formulas, you know, how much this accountant works

19   on bonded projects and how much he works on unbonded projects;

20   you know,  20/80 percent -- I don't know -- but I think that's

21   kind of where we're headed with this cash collateral order, and

22   it's going to take a little more time to work that out.  And to

23   make sure that the bank and merchants feel comfortable with the

24   way we're doing this in the long term scenario.

25         What we have for -- so what we've done for today is

**A/V▼ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-3555

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 3 of 15

```
 1    basically what we did last week -- we've come to you, or I'm
 2    coming to you -- or I am here, with a -- sort of a skeleton
 3    budget to get us through another week.  And I've gone through
 4    that budget with Merchants, and this is a budget that we aren't
 5    going to be using any proceeds from bonded projects, so they
 6    shouldn't have a problem with the cash we're using under this
 7    proposed budget.  And we've talked to the bank, JP Morgan, and
 8    they have gone through the budget, asked us to take -- remove
 9    certain things, put it on to a final budget that we'll
10    hopefully be able to work up, but they don't want to approve
11    that for this interim period, and we've agreed to do that.  And
12    if I may, I'd like to approach Your Honor with this budget,
13    just so I can quickly run through those numbers, they're on the
14    record, and then what we'll do is we'll attach this to another
15    interim cash collateral order.
16             THE COURT:  All right.  I'll take a bench copy then
17    of the document, and I understand the document's been made
18    available to the other counsel already?
19             MR. BROWN:  That's correct, Your Honor.  Basically
20    this document's called a cash flow pro forma.  And there's
21    three main columns.  There's a June 25th column, July 1st
22    column, and July 18th column.
23             THE COURT:  July 15th column?
24             MR. BROWN:  Yeah, July 15th column.
25             THE COURT:  Okay.
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 4 of 15

```
1          MR. BROWN:  The June 25th column, is essentially --
2     is those items, cash expenses that were approved last week by
3     this Court.  And so that kind of just shows a comparison I
4     guess to the other columns that we have.
5          The middle of the July 1st column are the expenses
6     we're asking the Court to approve today for another seven day
7     interim period, and I'm going to take some of those line items
8     off there that I've discussed with Mr. Collins.
9          In the July 8th column are those expenses we'll
10    probably be asking Your Honor to approve next week, and we'll
11    be moving some of the expenses from July 1st to the July 8th
12    column as we continue to negotiate this final order.
13         THE COURT:  All right, do we have a July 8th column,
14    or a July --
15         MR. BROWN:  I'm sorry, I keep on calling it the July
16    15th column, but we should probably cross that out and say July
17    8th, because those are actually -- some of those, most of those
18    expenses are coming due on July 8th.
19         THE COURT:  All right.
20         MR. BROWN:  For example, the next payroll.  We just
21    have a small payroll due tomorrow, but --
22         THE COURT:  All right.  What you're engaged in doing
23    here is proposing a cash collateral budget for approval which
24    covers one week --
25         MR. BROWN:  Exactly, that's correct.
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-5553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 5 of 15

```
1          THE COURT:  -- through and including July --
2          MR. BROWN:  That's correct.
3          THE COURT:  Got it.
4          MR. BROWN:  We'll need the next hearing on or before
5    July 8th so we can approve the expenses in the right hand
6    column.  But the July 15th column that I've since changed to
7    July 8th column.
8          The bank has consented to an interim use of cash
9    collateral for the expenses in the July 1st column over the
10   next week.  And I'm going to tell you, Your Honor, the ones
11   that they have not consented to that we're going to -- that we
12   won't pay during this interim period.
13         The first that we won't pay during this interim
14   period is the rent expense to the Yuma office, that's under
15   administrative costs.  And the amount there, I believe it's
16   $1200.  So that's going to come off of this interim budget.
17   The one just below that, the rent expense for the Phoenix
18   office is going to come off of this July 1st interim budget.
19   And then the Maricopa County Treasurer property tax -- that,
20   too, will come off this July 1st interim budget.  And then two
21   lines below that, and we're going to get to this in a minute,
22   but it's the pre-petition insurance premiums that we've asked
23   for authority to pay -- or that we've sought authorization to
24   pay today, in the amount of 21,294.  That's going to come off
25   of this interim budget.
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix AZ (602) 263-0885
Tucson AZ (520) 603-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 6 of 15

1    And then the only other item I'm aware of, and Mr.

2    Collins will correct me if I'm wrong, is employee housing,

3    that's three or four lines from the bottom of that --

4    administrative costs spreadsheet.  And that's $4,750.  We're

5    going to hold off on paying that as well under the interim

6    budget.

7         MR. COLLINS:  That's correct, Judge.  And for the

8    purpose of the expedited hearing on the payment of these

9    pre-petition insurance premiums, I think we're just simply

10   asking you to roll that to the hearing that is set for next

11   Thursday at 10.

12        MR. BROWN:  That's correct.  And so with that, those

13   are the expenses minus the ones that I just clarified on the

14   record that we're going to ask for approval to pay on an

15   interim basis until we can get to the next cash collateral

16   hearing.  I think Merchants -- Mr. Pearson may want to add

17   something to the record on this before -- am I correct?

18        MR. PEARSON:  Yeah, that's correct, Your Honor.

19        THE COURT:  Mr. Pearson?

20        MR. PEARSON:  Your Honor, the Debtor has -- I'm Hank

21   Pearson for Merchants -- the Debtor has represented that none

22   of the proceeds in the account from which these funds are going

23   to be paid are bonded contract proceeds, and we haven't had a

24   chance to actually perform any sort of a tracing to make sure

25   that we agree with the Debtor's position.  So we would just

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix AZ (602)266-6033
Tucson AZ (520) 661-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 7 of 15

1  like to reserve the right to a certifiable 7B lien in the event

2  that we were later to trace any of these proceeds back to

3  bonded contract proceeds from the Wells Fargo account, where

4  they're going to paying these bills in the next week.

5       THE COURT:  All right.  That reservation of position

6  is noted.  Yes, Mr. Collins.

7       MR. COLLINS:  Just a couple other things, Judge.  My

8  understanding is the Debtor possession accounts are at Wells

9  Fargo.  And so my assumption is that the expenses that we've

10  just walked through that are acceptable to the bank are coming

11  out of that Wells Fargo account?

12       MR. BROWN:  That's correct.

13       MR. COLLINS:  Okay.  And the reason I raise the issue

14  is because that was our understanding from the last time we

15  were here, and it turned out that there was an automatic

16  payroll mechanism set up to where a particular Bank One account

17  was being hit for that payroll and in fact the 28,000 or so

18  that was paid for payroll last week came out of that Bank One

19  account, and it's our understanding that -- that they're going

20  to reverse that by having money come out -- that exact same

21  amount of money come out of the Wells Fargo account,

22  replenished back to the Bank One account, and set it back to

23  where we thought we were in the first instance.

24       THE COURT:  Let's see if we have agreement on that as

25  well?

A/V▾ TRONICS, INC.
E-Reporting and E-Transcription
Phoenix, AZ (602)263-0885
Tucson, AZ (520)882-3455
Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 8 of 15

1       MR. BROWN:  We do.  That's correct.

2       THE COURT:  All right.  Noted.

3       MR. COLLINS:  The other thing that was to be paid out

4   of the last budget, that one week period, was payments to Bank

5   One; we're still consenting to that being paid, but it hasn't

6   been paid yet.  And our understanding again is that it's coming

7   out of that Wells Fargo account.

8       MR. BROWN:  That's correct as well.

9       MR. COLLINS:  Two other items; we're getting close to

10  the end here, Judge.  One is that of our four obligations, two

11  are designated as leases, they're really not leases.  They're

12  more financing arrangements.  But on one of the leases, there

13  are three vehicles which we understand are going to be turned

14  over to us.  We're going to sell those vehicles and we're going

15  to apply all the proceeds directly to that obligation.  And so

16  we'd like to make arrangements in this next week period to come

17  and pick up those vehicles with the understanding that the stay

18  will be lifted so we can do those UCC sales.

19      MR. BROWN:  Can I just confer quickly with my

20  client to --

21      THE COURT:  Yes -- give --

22      MR. BROWN:  -- see if that will happen in the next

23  week or not?

24      THE COURT:  All right, we'll give counsel a moment to

25  confer.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 9 of 15

1    MR. BROWN:  Yes, Your Honor, that's fine.  We can get

2    that done in the next week.  We'll make arrangements with Bank

3    One whether they're going to pick them up or we're going to

4    drop them off, or however they want to work that.

5    THE COURT:  All right.  That stipulation is --

6    through counsel is noted on the record.

7    MR. COLLINS:  One of the other leases has only one

8    vehicle associated with it, and as I understand it, Mrs.

9    Reynoso has possession of that vehicle and is in discussion

10   with the bank of whether she's just going to separately take

11   over the payments on that, but I'd like to address that next

12   time period for Eric, if he could bring that back to his

13   client.

14   And then finally, we have sent personal financial

15   statements to Mr. and Mrs. Reynoso.  We need to get those fully

16   executed and dated before we're at the next hearing, because

17   that's going to be important as to how we look at the longer

18   term of budget and cash collateral use from the bank's

19   perspective.

20   THE COURT:  All right.  So we're looking --

21   Creditor's looking for a commitment from -- of signed financial

22   statements from principals of the Debtor.

23   MR. BROWN:  Well that's fine, Your Honor.  We really

24   only have control -- and I've used control in a loose sense of

25   the word, because Mr. Reynoso is not our client.  But he will

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 261-3555
Tucson, AZ (520) 881-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 10 of 15

1   be able to submit that personal financial statement by

2   tomorrow.  I don't know where the bank is at with Mrs. Reynoso.

3   I understand they also want a personal financial statement from

4   her.

5           MR. COLLINS:  The fact is, Judge, I'm not really

6   looking for the commitment on the record, I'm just warning

7   everybody that if we're going to make progress by the end of

8   this next week, that's going to be a part of what we need to

9   see.

10          MR. BROWN:  Okay.

11          MR. COLLINS:  Thank you.

12          THE COURT:  All right.  Have we -- have we

13  calculated, gentlemen, the amount of cash collateral that's

14  being -- that is sought to be authorized for use up through and

15  including July 7th?  The original figure I think was $73,404,

16  but now we've made a number of significant deletions?

17          MR. COLLINS:  Judge, I show the number as 67,029

18  minus those deletions.  Are we looking at the same budget?

19          MR. PEARSON:  Well I think it wouldn't be the 67,029;

20  it would the 73,404.

21          MR. BROWN:  When I do that calculation, I get 34,964

22  as the authorized use.

23          MR. PEARSON:  Yeah, because it's that number plus

24  that number, we reach that.

25          MR. COLLINS:  -- next page.  Okay.  We can work out

**A/V▼ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 403-5553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 11 of 15

1  the math, Judge.  I think everybody understands what the story

2  is.

3        MR. BROWN:  I believe it's 34,964.  And if Mr.

4  Pearson's wrong, I'll -- I'll be upset later on, but --

5        THE COURT:  All right.  Well, we're -- all of us are

6  a little math challenged, but we understand the concept.  We're

7  working from this exhibit, and we've agreed as to the

8  deletions.  We haven't yet done the math.  But it is what it

9  is.  I'll authorize the use of cash collateral as agreed to by

10  these parties at these hearings, such use to go through and

11  including close of business on July 8th.

12        I'm going to need a continued status hearing to be

13  set, please.  Preferably on July 8th.  If that won't work for

14  us, we need to set it slightly before July 8th.  I'd like 30

15  minutes for that hearing.  I'll take less time than that if I

16  have to.

17        THE CLERK:  July 7th at 11:00 they will already be

18  here.

19        THE COURT:  All right, July 7th at -- 11 was that?

20        THE CLERK:  Yes.

21        THE COURT:  All right.  I'm going to set a continued

22  cash collateral hearing, gentlemen, in this courtroom for July

23  7th at 11:00.  Anyone else wish to address cash collateral

24  matters?  Yes.

25        MR. BROWN:  Just one final housecleaning issue.  I

1   think we submitted our second interim cash collateral order

2   with the proposed budget early this week.  And it hasn't been

3   signed and docketed yet, but I just remind the Court, and so.

4           THE COURT:  All right.  You've electronically

5   uploaded a cash collateral order?

6           MR. BROWN:  That's correct.

7           THE COURT:  Second, could we check the docket and see

8   if that order's been signed?

9           MR. BROWN:  I only do so because the paralegal in my

10  office is very anxious, so --

11          THE COURT:  All right.  We need to --

12          MR. BROWN:  -- she asked me to bring that up.

13          THE COURT:  -- well we don't want to get you in

14  trouble with a paralegal, so we'll pursue this here.  I'm

15  asking the lady to check, because I thought just a little bit

16  ago, I was current on signing off on all of my orders.  So, I

17  don't know which one of us is going to get in trouble here.

18          MR. BROWN:  Hopefully, it's not my paralegal, she

19  didn't upload it.

20          THE CLERK:  No, I don't see that order on the docket

21  either.

22          THE COURT:  All right.  And we can't -- we don't show

23  that the order is signed, and I don't -- and I surely don't

24  have a memory of having it signed, Mr. Brown.  But my judicial

25  assistant is recovering from a surgical procedure, so I have a

1  series of excellent but temporary help.  So the fault may be
2  mine.  Why don't you do this.  Why don't you have your staff
3  contact my staff this afternoon and verify that that order is
4  in the queue, and it's going to be presented to me for my
5  signature later today, all right?
6          MR. BROWN:  Okay.
7          THE COURT:  Very good.
8          MR. BROWN:  Thank you, Your Honor.
9          THE COURT:  Anything else on cash collateral?  Our
10  second aspect to the hearing relates to an accelerated motion
11  dealing with insurance premiums.  Let's see what the update is
12  on that matter.
13          MR. BROWN:  Your Honor, as Mr. Collins indicated in
14  his, when we went through the cash collateral budget, what
15  we're going to ask the Court to do, at this time the bank isn't
16  willing to consent to the use of cash collateral to pay that.
17  And they have asked that we postpone that until the next
18  hearing on cash collateral, the July 7th hearing, I suppose,
19  that we bring it up then, and seek authorization then and
20  include it in a final cash collateral budget if we've got one
21  worked out.
22          THE COURT:  All right.  The pending motion for
23  authorization to make a payment of insurance premiums, we're
24  going to reset that motion for July 7th at 11:00.  What else do
25  we need to discuss while we're together?

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 264-2230
Tucson, AZ (520) 881-3553

Case 2:05-bk-10489-GBN   Doc 76   Filed 07/18/05   Entered 07/18/05 15:20:54   Desc
Main Document      Page 14 of 15

1    MR. BROWN:  I think that's it from our perspective,

2  Your Honor.

3    THE COURT:  All right.  We'll be adjourned in this

4  matter.

5    MR. BROWN:  Thank you.

6    (Proceedings Concluded at 10:39 a.m.)

7

8

9

10

11

12    I certify that the foregoing is a correct transcript

13  from the record of proceedings in the above-entitled matter.

14

15  Dated: July 15, 2005               *Lynn Mathers*

16                                    _____
                                      A/V Tronics, Inc.
17                                    365 E. Coronado Road
                                      Suite #100
18                                    Phoenix, AZ  85004-1525

19

20

21

22

23

24

25