UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

_____
                                                )
In re:                                          )
                                                )
AR UTILITY SPECIALISTS, INC.    CH. 11   )    2:05-bk-10489-GBN
                                                )
1)  CONTINUED HEARING ON THE MOTION TO   )
    ENFORCE THE AUTOMATIC STAY (FR.      )
    06-23)                               )
                                                )
2)  CONTINUED HEARING RE: USE OF CASH    )
    COLLATERAL (FR. 06-30)               )
                                                )
3)  CONTINUED HEARING RE: AUTHORIZATION  )
    FOR THE PAYMENT OF PREPETITION       )
    PREMIUMS ON INSURANCE POLICIES       )
    (FR. 06-30)                          )
_____

                         U.S. Bankruptcy Court
                         230 N. First Avenue, Suite 101
                         Phoenix, AZ 85003-1706

                         July 7, 2005
                         11:05 a.m.

        BEFORE THE HONORABLE GEORGE B. NIELSEN, JR., Judge

APPEARANCES:

For the Debtor:                    J. Henk Taylor
                                   LEWIS AND ROCA LLP
                                   40 N. Central Ave.
                                   Phoenix, AZ 85004-4429

For Cynthia Reynoso:               Robert Kort
                                   SNELL & WILMER, L.L.P.
                                   One Arizona Center
                                   400 E. Van Buren
                                   Phoenix, AZ 85004-0001

For Merchants Bonding               Robert J. Berens
Company:                            MANN, BERENS & WISNER, LLP
                                    2929 N. Central Ave., #1600
                                    Phoenix, AZ 85012-2760

```
 1   APPEARANCES:   (Continued)

 2   For JP Morgan Chase Bank:        Daniel P. Collins
                                      COLLINS, MAY, POTENZA, BARAN
 3                                    & GILLESPIE
                                      201 North Central Avenue
 4                                    Phoenix, AZ 95004-0022

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound technician, Jo-Ann
25   Stawarski; transcript produced by A/V Tronics, Inc.
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-3353

1          THE CLERK:  All rise.

2          THE COURT:  Please be seated.

3          THE CLERK:  Case 05-10489, AR Utility Specialists.

4          THE COURT:  I'll take appearances in all of our

5     matters set for hearing.

6          MR. TAYLOR:  Good morning, Your Honor.  Henk Taylor

7     for AR Utility.

8          MR. COLLINS:  Good morning.  Dan Collins on behalf of

9     Chase Bank.

10          MR. BERENS:  Good morning, Your Honor.  Bob Berens on

11     behalf of Merchants Bonding Company.

12          MR. KORT:  Good morning.  Robert Kort on behalf of

13     Cynthia Reynoso.

14          THE COURT:  Good morning, gentlemen.  Why don't we

15     handle these matters in the order that we've calendared them.

16     First matter is a continued hearing on the motion to enforce

17     the automatic stay.  I've signed an order this morning, which I

18     believe counsel has approved the form of, which deals with that

19     matter.  I don't know if there's other issues relating to that

20     particular subject, however.

21          Mr. Taylor?

22          MR. TAYLOR:  I don't believe there are, Your

23     Honor.

24          THE COURT:  Anyone wish to be heard on the motion,

25     now the order, to enforce the automatic stay of section 362?

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 254-8073
Tucson, AZ (520) 661-3353

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 3 of 20

1  All right.  As indicated, the order's been signed.  It's

2  available on our electronic filing.

3          The next matter is -- deals with the use of cash

4  collateral on an interim basis.  We'll see what the status is

5  on that matter.  Mr. Taylor?

6          MR. TAYLOR:  Okay, Your Honor.  I'll attempt to

7  summarize with the status is.  I'll let Mr. Berens and Mr.

8  Collins comment on it.

9          We have been in some lengthy discussions since our

10 last hearing on this last week.  What we have is I believe a

11 tentative agreement on another interim order that carries --

12 would carry the company through August 15th.  A proposed pro

13 forma budget has been circulated.  There may be some issues

14 with Mr. Berens' client as to some of the general

15 administration expenses, but I believe at this point we have a

16 general agreement on the broad terms of an outline of a budget

17 through August 15th.

18          We have also discussed the terms of the order itself.

19 It would be different from the orders that this Court has

20 entered previously on an interim basis; it's going to include

21 some greater protections for Merchants and JP Morgan, including

22 some default provisions.  And at the risk of, you know, missing

23 any of those provisions, if you wish, you could ask Mr. Berens

24 and Mr. Collins about those.  But we are -- it's my

25 understanding that I will get a revised draft of that order

1  back from the two of them this afternoon, and with the goal of

2  lodging with the Court probably tomorrow morning in all

3  honesty, a form of order with a budget attached to it.  Through

4  August 15th.  That's the summary on where we are with an order

5  and a budget.

6        That said, I want to be absolutely positive and get

7  Court authority today at today's hearing, to make certain

8  payments that need to be made tomorrow.  Specifically, these

9  are payments for salaries and wages.  There's a payroll due

10 tomorrow.  Payroll taxes and insurance and benefits.  I've

11 given to Mr. Collins and Mr. Berens a listing of these

12 expenses.  And to my knowledge, they do not object to us paying

13 those expenses tomorrow out of the Wells Fargo DIP account.

14       My client informs me that as of this morning, there

15 was roughly $170,000 in the Wells Fargo DIP account.  The total

16 expenses that I'm asking for immediate authority to pay without

17 any questions so to speak, and not waiting for any order is --

18 written order that is -- is $82,293.  All of the money in the

19 Wells Fargo DIP account is from non-bonded project proceeds.

20 So it's not subject to any equitable liens or rights on the

21 part of the bonding company.

22       Then so at this point, Your Honor, I'd ask for the

23 Court to orally today first make sure we have the approval to

24 pay those expenses tomorrow out of the Wells Fargo DIP account;

25 and secondly, I guess, ask the Court that when we do work out

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 5 of 20

1  an interim cash collateral order and budget, and -- hopefully

2  tomorrow, that the Court would be able to sign and enter that

3  order without further hearing.  And unless the Court has any

4  questions of me at the moment, I'll let Mr. Berens and Mr.

5  Collins talk.

6      THE COURT:  Okay.  I should have indicated I signed

7  on July 5th an interim cash collateral order.  But I understand

8  what -- first of all, it's proposed that there be a stipulated

9  cash collateral order of longer duration to last through and

10  including August 15th.  The hope is that that stipulated order

11  can be generated shortly.

12      But what the Debtor seeks right now is approval for

13  payroll and payroll taxes, and the usual payments associated

14  with making payroll, not to exceed $82,293.  A consent is

15  sought for that -- Court approval is sought for that, so that

16  that payroll can be disbursed tomorrow.

17      Let's turn to our creditors, see what their position

18  is on this matter.  Mr. Berens?

19      MR. BERENS:  Your Honor, Merchants consents to the

20  payment of 82,293.  So, I think there's consent on all parties'

21  part.

22      We have been -- the big issue we're facing is between

23  June 1st and June 3rd, there was approximately $355,000 of

24  bonded proceeds that was paid to the Debtor into the JP Morgan

25  savings account.  A lot of that money got moved over to the

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 254-8464
Tucson, AZ (520) 661-3355

Case 2:05-bk-10489-GBN   Doc 77  Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 6 of 20

1   checking account -- JP Morgan checking account.  And there was

2   a balance left in the JP Morgan checking account.  We have

3   given cases showing what's called the lowest intermediate

4   balance rule, that the surety can trace those funds.  And that

5   the surety's equitable lien would still attach to those funds.

6   And I'm not asking you today to rule that way.  What we're

7   going to put in the cash collateral stipulation is that

8   Merchants is going to consent to the use of that for non-bonded

9   purposes.  And the parties are also going to stipulate that as

10  of August 15th, when this term ends on the next cash collateral

11  order, that those monies would be replenished from non-bonded

12  receipts.  And what I'm intending to put into the cash

13  collateral stipulation is actually an order by the Court that

14  the use of that money and replenishment does not prejudice

15  Merchants' equitable lien or its ability to trace funds.

16  Because under the lowest intermediate balance rule, if the

17  balance goes to zero, you're out of luck.  And that's probably

18  what's going to happen.

19          But if all parties agree that the use of that money

20  and replenishment will not be an impediment to Merchants'

21  tracing funds, that is something that Merchants is willing to

22  do.  And there are some added protections for Merchants doing

23  that.  And I'm wondering if the Court -- if it was presented

24  with such an order, would be inclined to sign that.

25          THE COURT:  Providing of course it's a consensual

1   order, which I think is what's being proposed.  I would view

2   that essentially as a reservation of rights provision, and I

3   wouldn't have a problem with that, unless one of these parties

4   in interest would.

5          MR. BERENS:  Okay, great.  Thanks.

6          THE COURT:  Mr. Collins?

7          MR. COLLINS:  Judge, first of all, we're in agreement

8   that this reservation of rights that Mr. Berens just described

9   is something that the bank is conceptually willing to go along

10  with.  I'm wanting to look at the language and talk to the

11  client about it, but I think that's where we're headed.

12         There are some other bells and whistles that we're

13  going to want here, such as a weekly accounting of what is

14  going in and out of the Wells Fargo account, really from the

15  day of the bankruptcy up to every Friday, and we're hoping that

16  by every Tuesday, we'll have that report.  I understand Mr.

17  Berens wants that report as well.

18         You have already authorized the payment of the June

19  and July payments to Bank One; they haven't been made yet, but

20  that's certainly something that has to happen.  Then come

21  August 1, there's another payment of 6387 that needs to be

22  paid.  We're going to need access to the real property and

23  personal property so that we can have somebody value those

24  assets, all of which are collateral and that has to happen next

25  week.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 861-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 8 of 20

 1        We are expecting next week to receive two of the

 2    three vehicles that are on a lease, one of two leases with Bank

 3    One.  I say Bank One -- Chase Bank and JP Morgan, it's all the

 4    same, Judge.

 5        And we're eventually going to be talking about

 6    separate accounting for separated bonded jobs.  But in the

 7    meantime, Mr. Berens and I are enjoying the academic discussion

 8    on whether he's cross collateralized on different jobs, whether

 9    his equitable right of subrogation steps onto the bank savings

10    account, where these federal bonded jobs are going directly

11    into.  And then once they're removed from them, from that

12    account, just how far does that equitable lien go.  I don't

13    think that needs to be resolved today, and maybe it will never

14    need to be resolved if everything works out the way everybody

15    is hoping it will.  But for the time being, those are the

16    different issues that we're discussing.

17        So, Judge, in terms of what we're willing to do, Yes,

18    Mr. Taylor's right; August 15 is the date that we're looking

19    for.  But if there's failure of these items that I've mentioned

20    in the meantime, that would be an event of default, and that's

21    going to be built into this order.  Does the Court have any

22    questions?

23        THE COURT:  I have none.  I think I understand.  Are

24    there other parties that wish to be heard, have questions or

25    comments on the cash collateral aspects of the agreement that's

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix AZ (602) 478-0435
Tucson, AZ (520) 861-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 9 of 20

1  being worked on by several of these parties?

2          All right.  What I'll do is this.  First of all, I'll

3  grant oral authorization at this time for allowing the Debtor

4  to immediately make payroll in an amount from non-bonded

5  proceeds so-called, not to exceed $82,293.

6          Second, I'll note that right now the parties

7  anticipate in the next few days, the ability to lodge a

8  stipulated order dealing with additional uses of cash

9  collateral for the period through and including August 15th.

10          Is it -- would it be useful to go ahead and set a

11  continued cash collateral hearing then, perhaps shortly before

12  the 15th?  Or are the relationships such that we can just leave

13  the matter subject to call?  Mr. Taylor?

14          MR. TAYLOR:  No, Your Honor, I'd like to have a

15  continued cash collateral hearing set.  Perhaps if the Court

16  has some time on its calendar before the 15th when our next

17  hearing is, that would be perfect.

18          THE COURT:  All right.

19          I'm going to ask the courtroom deputy if she'll set a

20  hearing for us.  It'll have to be in the latter -- during --

21  possibly the 11th or 12th of August.  This will -- we'll carry

22  this as a continued hearing use on the use of cash collateral,

23  so it'll be a continuance of calendar item seven.  I'd like 15

24  to 30 minutes for that hearing, please.

25          THE CLERK:  August 12th at 9:30.

1          MR. COLLINS:  I assume the 11th was not available?

2          MR. TAYLOR:  Your Honor --

3          MR. COLLINS:  I know I'm on a plane on the 12th, and

4     right at that very time.

5          THE COURT:  All right.  Well, I presume the -- we can

6     certainly check for the 15th.  I thought since that was the

7     expiration date, that it'd be better to have parties in before

8     the 15th, but --

9          MR. COLLINS:  Exactly.  I was thinking the 11th

10    actually, Judge.

11         THE COURT:  Oh.  The 11th?  Could we check on that

12    date, please?

13         THE CLERK:  The 11th -- August 11th at 2:30.

14         MR. COLLINS:  Thank you.

15         THE COURT:  All right.  We'll establish then the

16    continued use of cash collateral hearing will be August 11th at

17    2:30.  I'll sign off on the stipulated order as soon as it

18    reaches me.  I think that's all on that subject.

19         The next matter is a continued hearing on the

20    Debtor's motion for authorization for the payment of insurance.

21    These are various pre-petition insurance claims.  I've reviewed

22    the Debtor's motion; I'm not aware of any objections.  Let's

23    see what the status is here.

24         MR. TAYLOR:  Your Honor, we -- this has been set for

25    hearing last week on an expedited basis.  We continued it

**A/V TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix (602) 953-5359
Tucson, AZ (520) 561-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 11 of 20

1   because at that point we didn't have cash collateral authority

2   to make those payments this week essentially.

3           What I would ask the Court to do today is grant the

4   motion.  I understand Mr. Berens may have some concerns about

5   making these payments on insurance -- pre-petition insurance

6   premiums.  I'm confident I can convince him that that's a

7   pretty important thing to do.  But at any rate, what I'm not

8   asking for in this motion is cash collateral authority to make

9   these payments.  I'm just asking court authority to make these

10  payments as a matter of -- because they are pre-petition claims

11  but we believe that they are priority claims and they are

12  critically important because he have been told by several of

13  these insurance companies that if these premiums are not paid,

14  that they're going to be coming to court pretty quickly,

15  seeking the stay motions to terminate these policies.  And

16  these are policies for health, supplemental health, dental and

17  workman's comp.  So we're -- I would ask the Court to grant us

18  the authority to make these payments, subject to a cash

19  collateral budget.

20          THE COURT:  All right.  So the authority that's being

21  sought here is to -- for the authorization to pay certain of

22  these insurers their pre-petition claims on the -- based on the

23  argument that these are priority claims anyway, and would have

24  to be paid.  So their payment prior to plan confirmation would

25  not run afoul of the code.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 603-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 12 of 20

1    And that would be 12,675.04 to Pacificare, American

2    Family Life, 1538.88; United Concordia 3144.10.  And the State

3    Compensation Fund 3936.  This would not -- this authorization

4    would not be a cash collateral authorization.  However, the

5    consent of the secured parties would have to be sought before

6    the actual payments in these amounts could be made.

7         MR. TAYLOR:  That's correct, Your Honor.

8         THE COURT:  All right.  That is the proposal.  Anyone

9    wish to be heard?  Have objections, questions, concerns to be

10   addressed?

11        All right.  None appearing, I'll authorize the

12   payment of these pre-petition claims at this time, ahead of

13   plan confirmation based on the theory that they're priority

14   claims, and need to be paid anyway.  And they're -- these

15   claims are so situated that they would adversely impact the

16   reorganization if they were not made.  I'll sign an order when

17   it's -- an appropriate order is uploaded; serve copies on all

18   of the counsel who have appeared at this hearing.

19        Gentlemen, what other matters can we discuss while

20   we're together this morning?

21        MR. TAYLOR:  Your Honor, there's one other matter I'd

22   like to ask the Court to take up.  On Friday, this past Friday,

23   we filed a motion with the Court requesting authority to

24   maintain and use one of the pre-petition bank accounts at JP

25   Morgan.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 254-3333
Tucson, AZ (520) 561-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document    Page 13 of 20

1    Let me perhaps refresh the Court's memory on the

2    accounts that are at JP Morgan.  As of the petition date, there

3    were three accounts.  There is a savings account, there is a

4    checking account, and there is a medical reimbursement account

5    which is a de minimis account.  So, the two primary accounts as

6    of the petition date were the savings account and a checking

7    account.

8    The savings account is -- it currently holds

9    approximately $61,000.  Monies from the federal government on

10   the bonded projects are directly deposited into that account at

11   JP Morgan.  There's a direct deposit mechanism that's been set

12   up in advance with the government.  In fact, I understand from

13   Mr. Collins that in fact yesterday an additional $72,000 was

14   directly deposited by the federal government into that

15   account.

16   All of those funds are the proceeds of bonded

17   projects.  And so we -- in the cash collateral order that you

18   will be seeing hopefully very soon -- we contemplate using

19   those funds to continue work on the bonded projects.  And what

20   we need to do is we need to have a mechanism to ensure that we

21   can receive future payments from the federal government on

22   these projects.  At the same time, have an account that we can

23   write checks off of to pay subs and material, and then continue

24   to work post-petition on those projects.

25   Because this is a savings account, even if we -- the

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 403-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 14 of 20

1   bank would let us do this, JP Morgan that is -- there's no real

2   ability to write checks off of a savings account.  So, but at

3   the same time, it is -- I understand, very difficult and time

4   consuming to get the federal government to actually switch

5   accounts from which it makes direct deposits.  I think in a

6   best case scenario, it would take 60 days, upwards of 120 days

7   is not unheard of in these situations I understand.

8          So, in order to insure that we don't have any

9   disruption or delay in the payment of amounts from the federal

10  government, we're asking the Court to authorize us to maintain

11  the savings account at JP Morgan to receive those funds, as was

12  just happened yesterday.  And then to take those funds out of

13  that account and move them and -- the mechanism is not exactly

14  clear to me whether that would be by a wire transfer, an

15  automatic sweep or whatever, but we'll explore what's the most

16  efficient and cost effective for everyone involved -- move

17  those funds over to a segregated checking account at Wells

18  Fargo bank that we will be able to then use, again operating

19  under a cash collateral order, to do work on the bonded

20  projects.

21         So, this is really -- the Court has previously

22  ordered that we segregate those funds.  Those funds that

23  effectively have been segregated because of this -- the money's

24  in this savings account right now.  But we need a mechanism

25  that we can get it out of that savings account and into a

1   checking account that's segregated.

2        We filed this motion on Friday; it hasn't been

3   noticed to anybody.  The only parties that I think would be of

4   interest in it are lenders and Merchants that's sitting right

5   here.  I don't believe they have any objection to this motion.

6        The other potential party that might have an

7   objection I guess is the US Trustee's office.  But frankly,

8   given the Court's previous orders on cash collateral in the

9   situation that we face, I would request that the Court grant us

10  authority to do this today, because it is contemplated that we

11  are going to start work on those bonded projects next week, and

12  we need to have the ability to write checks on those projects

13  next week.

14       So I understand it's without notice to the US

15  Trustee's office and others, but I also think that this is --

16  this is pretty much a common sense motion that shouldn't be

17  objected to, especially when we have the financial institutions

18  and interested parties in agreement on it, Your Honor.

19       THE COURT:  The -- you're correct that it's -- the US

20  Trustee is a strong advocate for the position that all existing

21  bank accounts in Chapter 11 should be closed and new Debtor in

22  possession accounts opened.  And they strongly advocate that

23  position.  There's been times in the past in my experience when

24  they have agreed to this matter.  And it's certainly -- you

25  make a persuasive case here.

1    But I'm reluctant at this point to do something

2    concerning a motion which apparently may not even have been

3    served on the US Trustee.  This is assuming there that they're

4    the biggest advocate there.

5    Why don't we turn to the creditors and see what they

6    feel about this concept, see if there are -- if they're going

7    to have some concerns, and then we'll go back and talk about

8    the US Trustee.  Mr. Berens?

9    MR. BERENS:  Your Honor, Merchants strongly supports

10   this motion.  I've been involved with a number of government

11   projects and direct deposits and trying to move them.  And it's

12   nothing but a nightmare.  It takes a long time; you don't know

13   when it's going to occur; and there can be disruption in the

14   receipt of deposits.  So, you know, we would support the

15   motion.

16   The two points that I'd add, and Mr. Taylor mentioned

17   both, one, when the money gets moved, we would prefer that it

18   be swept automatically.  And we're not sure -- Mr. Collins

19   thinks it's possible, but we're not sure -- if you can have an

20   automatic sweep between two different banks.  Because it's

21   going from JP Morgan to Wells Fargo.  If it can be done, that

22   would be the preferred alternative.

23   The order, to the extent there's an order down the

24   road, we want to make sure that the new account at Wells Fargo

25   is a new checking account, and it maintains segregated amounts

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 230-5555
Tucson, AZ (520) 561-3555

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 17 of 20

1   strictly from the bonded proceeds.  But we have agreement on

2   that from the Debtor and from the lender.  So I think that as

3   long as, you know, we craft the order together, we're fine.

4   And we would support the motion.

5           THE COURT:  Mr. Collins?

6           MR. COLLINS:  Judge, the bank also supports the

7   motion.

8           THE COURT:  All right.  Well, going back to the US

9   Trustee, Mr. Taylor, first of all, it's important that you do

10  have the support of the secured creditors here, and you make a

11  good case.  But I'm reluctant to start out early in this

12  Chapter 11 with a concept of deciding matters that weren't set

13  on the calendar without notice to the US Trustee, particularly

14  when they're matters that the US Trustee has -- attaches great

15  importance to, for good reasons as well.

16          What I think you should do is this.  I think you

17  should discuss with the US Trustee.  And then certainly, I have

18  no objection for you telling him that it's been addressed in

19  open court.  I haven't expressed any reservations about it,

20  given the support of the creditors.  But I'd like you to

21  attempt to get either a stipulation from the US Trustee or

22  approval as to a form of an order.

23          And if you can do that, then I'd be -- I would gladly

24  sign such an order without a hearing, provided that it's made

25  clear that the US Trustee has no opposition to it.  I don't

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 403-3333

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document        Page 18 of 20

1   know if our lenders want to sign off on that order?

2         MR. COLLINS:  I do, Judge, because I'm particularly

3   concerned about the mechanics of this whole thing.  I want to

4   make it clear in the order how this is all going to work, and

5   who's going to have control over how it works.

6         THE COURT:  All right.  Mr. Collins wishes approval

7   rights as well.  And Mr. Berens?

8         MR. BERENS:  Yes, I'd like to sign off, too.

9         THE COURT:  And Mr. Berens as well.  So, if we can --

10  sounds like we need a three or a four party stipulated order,

11  but it sounds like you're close to getting all those parties.

12  If you can get the US Trustee to approve that or indicate no

13  opposition, I'll enter that order immediately.

14        If you can't, I'll set a hearing on an accelerated

15  basis if this is indeed an emergency.

16        MR. TAYLOR:  Okay.

17        THE COURT:  All right?

18        MR. TAYLOR:  I think that is all that I have on my

19  list today, Your Honor.

20        THE COURT:  Okay.  I'll then inquire one more time.

21  Are there parties present that have other issues, have

22  questions, concerning the Chapter 11 case who wish to be heard

23  on other items?

24        And hearing none, we'll be adjourned until August

25  11th at 2:30 in this matter.  We are adjourned.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 861-3553

Case 2:05-bk-10489-GBN   Doc 77   Filed 07/18/05   Entered 07/18/05 15:21:59   Desc
Main Document      Page 19 of 20

1         (Proceedings Concluded at 11:32 a.m.)

2

3

4

5

6

7         I certify that the foregoing is a correct transcript

8  from the record of proceedings in the above-entitled matter.

9

10  Dated: July 18, 2005

*Lynn Mathers*

11                           A/V Tronics, Inc.

12                           365 E. Coronado Road
Suite #100

13                           Phoenix, AZ  85004-1525

14

15

16

17

18

19

20

21

22

23

24

25

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix, AZ (520) 561-3556
Tucson, AZ (520) 561-3553