UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

_____
                                         )
In re:                                   )
                                         )
AR UTILITY SPECIALISTS, INC.      CH:11 ) 2:05-bk-10489-GBN
                                         )
CYNTHIA REYNOSO vs. ALEJANDRO REYNOSO    ) ADV: 2-05-00648
                                         )
1) CONTINUED STATUS HEARING RE: REMOVAL  )
                                         )
2) CONTINUED HEARING RE: USE OF CASH     )
COLLATERAL                               )
                                         )
3) CONTINUED CHAPTER 11 STATUS HEARING   )
                                         )
_____)


                              U.S. Bankruptcy Court
                              230 North First Avenue, Suite 101
                              Phoenix, Arizona 85003-1706

                              March 27, 2006
                              9:19 a.m.

        BEFORE THE HONORABLE GEORGE B. NIELSEN, JR., Judge

APPEARANCES:

For AR Utility              J. Henk Taylor
Specialists, Inc.:          Lewis and Roca, LLP
                            40 North Central Avenue
                            Phoenix, Arizona 85004-4429



Proceedings recorded by electronic sound technician,
Joann Stawarski; transcript produced by Voice Writers of
America.

1      THE CLERK:  05-10489, AR Utility Specialists, Adversary
2  05-648.
3           THE COURT:  I'll take appearances in both the
4  adversary and the administrative matter.
5           MR. TAYLOR:  Your Honor, Henk Taylor for the debtor
6  in both matters.
7           THE COURT:  All right.  What -- should we start with,
8  the adversary, Mr. Taylor.  I think that deals with a -- a
9  state court bond?  I don't know if -- what the -- if you know
10  what the status of that litigation is?
11           MR. TAYLOR:  Your Honor, I haven't had a chance to
12  speak with Mr. Robert Kort about what we are going to do with
13  this.  The -- the state court bond has been resolved.  The
14  state court judge exonerated the bond so -- for the purpose for
15  this -- this Court, if you recall, made a limited remand of
16  that adversary to resolve that; that's been resolved.  I need
17  to speak with Mr. Kort.  My inclination is that we can probably
18  dismiss these claims without prejudice at this point.  You
19  know, if we need to refile them, we can refile them in the
20  bankruptcy cases, another adversary, but that's my sensitive.
21  But I -- I need to speak with Mr. Kort, so I'd ask that we
22  continue that for 60 or 90 days.
23           THE COURT:  We can certainly arrange that.  Let's
24  see, on the debtor that -- on administrative matters, on cash
25  collateral, I've entered a cash collateral order, I believe, on

1  March 7th.  What's the status there?

2         MR. TAYLOR:  Your Honor, that -- that deal was good

3  through this Friday the 31st.  I spoke with Mr. Berens who

4  represents Merchants, and we made a proposal for an extension

5  of that.  He needs to talk with his client about it, and we'll

6  be doing so today, I understand, so I anticipate that -- well,

7  I'm hoping that frankly we'll get an agreement to extend the

8  current deal for some period of time.  We've asked for six

9  months so that we can hopefully avoid just these monthly of

10 hearings on this.

11        But as I say, Mr. Berens hasn't had a chance to talk to

12 his client.  So we'd -- we'd request a one-week continuance.  I

13 believe the court already has set for next Tuesday, the

14 4th of April, at 11:15, a hearing on CSK's administrative claim

15 in this case.  We'd ask that a continue cash collateral hearing

16 be set for the same time.

17        THE COURT:  All right.  We need a hearing set

18 shortly, perhaps next week, and counsel suggests that there may

19 be a hearing already scheduled in connection with this case,

20 perhaps on April 4th, at 11:15.  Could we check and see?

21        THE CLERK:  Yes, there is a hearing.

22        THE COURT:  All right.  Will -- would you use your

23 good offices, and Mr. Taylor, to advise Mr. Berens that we've

24 set a continued cash collateral hearing for April 4th at 11:15.

25 That deals with calendar Item 4, and then the Chapter 11 status

1  hearing.  I know we've approved a property sale recently, but

2  any -- any other matters of note to report?

3          MR. TAYLOR:  Well, Your Honor, I think that's an

4  important matter.  I can report to the Court that we closed on

5  that sale last week on the -- and we actually closed on the

6  22nd with the buyer that this Court approved, for a total price

7  of $575,000.  JP Morgan Chase, which held a first lien on that

8  property has been paid off in full, so I don't think you'll be

9  seeing them any further in this case.

10      And that leaves for cash collateral purposes, Your Honor,

11  that leaves just Merchants, frankly, who has any interest in

12  cash collateral, just for your information.  That's why it's

13  been -- gonna be dealing primarily with Bob Berens on cash

14  collateral.

15          THE COURT:  Okay.

16          MR. TAYLOR:  We also paid off the real property

17  taxes.  We paid out of the escrow as well.  The brokerage

18  commission on the $540,000 original price, which is what we

19  asked for on our motion.  As I had mentioned to the Court at

20  the hearing two weeks ago on the sale, there is this issue of

21  paying a commission on the additional $35,000, which was --

22  which was obtained through the bidding in this court, and I

23  need to speak with Mr. Berens about that.  But I do believe

24  that the listing contract we have with our broker,

25  Jeff Jennings, clearly states that the -- that the commission

1 is to be paid on the sale price, and -- and so I think that I'm

2 going to get an agreement, I -- I -- I believe I'll get an

3 agreement with Mr. Berens to pay that additional commission,

4 which is not much; it's $1,500, frankly, out of the $35,000.

5 And once we get that resolved, there's gonna be about -- and

6 then there's some miscellaneous expenses associated with the

7 sale.

8      Once we get those taken care of, I believe there's gonna

9 probably be a 90 -- $91,000 net proceeds to the estate.  Those

10 funds are being held in a segregated account.  Merchants is

11 claiming at this point it does have a lien on $50,000 of that.

12 So I anticipate that I'll work with Mr. Berens to probably make

13 a distribution at some point to -- of at least $50,000 to

14 Merchants out of those funds.

15      But that is, I think, good news because it does -- the

16 sale did take care of JP Morgan, removes them as a creditor,

17 which is hopefully going to make it easier from an

18 administrative point of view in this case.

19      The other major project that we are working on is the Yuma

20 construction projects.  When we were last before you, we told

21 you that it looked like they were going to be done by the end

22 of this month.  They would be, I think, except for they

23 encountered an unforeseen problem on one of the projects, and

24 the -- the government has actually given the company a two-week

25 extension, so we're looking at April 10th completion date.

1    Merchants is well aware of that.  They've had their
2    advisor on site.  So there's -- there will be a change order
3    entered, I believe, on that contract, but as far as the one
4    project, the BOQ project that is done, final acceptance has
5    been obtained, and so we anticipate by April 10th that we'll be
6    done with the actual work on the second project.  We may not
7    have final acceptance by then, but it will be -- it should be
8    short -- coming shortly thereafter, which is, I -- this is
9    important, as I've alluded to you all along.
10    Your Honor, you know, getting completion of those
11    projects, determining what Merchants has come out of pocket on
12    those projects is the bonding company is important to
13    determining what their claim is in this case, and that's a --
14    that's a pretty important issue for us in dealing with
15    reorganization.  So hopefully within, you know, within a month,
16    we'll have a clearer picture on Merchants -- Merchants' claim
17    in this case.
18    Related to that, Your Honor, I think we're -- this would
19    be a good time for us to file a motion requesting a bar date on
20    claims; I think we'll be doing that shortly.  So you can expect
21    to see that.
22    The other item we are dealing with, as I've indicated to
23    you as well, is there's been a purchase offered for
24    Mr. Tom Kummer for the EDM Group, which is the electrical
25    engineering business side of this.  We've -- we've actually got

1  a draft, purchase, and sale agreement that's been prepared by

2  Mr. Kummer.  We are -- we've shown that to Mr. Berens so that

3  we can get Merchants' sense of it, because it's dealing with

4  Merchants' collateral at this point.  And I understand that

5  Merchants is -- is -- is going to be discussing that with

6  Mr. Berens, probably today.  So we are continuing to study that

7  offer.  I can't say that at this point it's something we're --

8  we're necessarily going to push forward with.  We have some

9  issues with the price being offered, but it's something that we

10 continue to look at.

11      So I think that -- I think that as far as the status

12 report goes, Your Honor, the -- the sale of the property, the

13 completion of the Yuma projects were an important advance for

14 us in the reorganization process.  Determining what's going to

15 happen with the sale that's going to go forward is another

16 important one.  So because, obviously, if we sell the EDM

17 Group, then that is essentially selling the revenue stream of

18 this business.  So we're -- hopefully, we'll be in a position,

19 we'll know better within probably 60 to 90 days, we'll know

20 what  the -- what the reorganization plan of this company is.

21      So I would request on status, Your Honor, maybe another

22 status conference at 60 to 90 days out from today, if that's

23 suitable to the Court.

24          THE COURT:  Okay.  And we'll do just that.  We'd like

25 a hearing set in about 90 days, please.  It will be a continued

1   status hearing in the adversary, Calendar Item 3.  And it will

2   all -- in the administrative case it will be a continued

3   Chapter 11 status hearing, Calendar Item 5.  Do we have that --

4   we just need 15 minutes total time.  Could we have that set in

5   approximately 90 days, please?

6               THE CLERK:  June 20th at 9:30.

7               THE COURT:  June 20 at 9:30 will be the continued

8   hearing on both of those matters, and I'll surely act on the --

9   the motion to set a date for filing claims when I'm asked to do

10  so.

11              MR. TAYLOR:  Thank you, Your Honor.

12              THE COURT:  Good.  We'll be adjourned in this matter.

13                    (Hearing concluded at 9:29 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

I, Amanda Self, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____          _____
Signature of Approved Transcriber          Date


_____

Typed or Printed Name

**Voice Writers of America**
Phoenix, AZ 602-288-8889
Tucson, AZ 888-777-5171