Thomas L. Kummer
2164 Siesta Avenue
Las Vegas, Nevada 89169
775-338-3705
reno4829@aol.com
Proposing Creditor



**FILED**

OCT - 1 2007

UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

## AT PHOENIX

| | |
|---|---|
| In the Matter of: ) | Case No. 2:05-bk-10489 GBN |
| ) | |
| AR Utilities Specialists, Inc., an ) | Chapter 11 |
| Arizona Corporation ) | |
| ) | Response To Objections To |
| ) | Plan And Disclosure Statement |
| _____ ) | |

The Proposing Creditor filed a Plan Of Reorganization (the "Plan")

for the above-named Debtor on August 30, 2007 along with a proposed

Disclosure Statement (the "Disclosure Statement"). The Court has

scheduled a hearing regarding approval of the Disclosure Statement on

October 5, 2007. Notice of the filing of the Plan of Reorganization and the

hearing were served in accordance with Bankruptcy Rule 3017 on

September 8, 2007.[1] Objections to the Disclosure Statement have been filed

---

[1]  The Certificate of Service was filed by the Proposing Creditor sets forth the service of the Notice of
Hearing and the proposed Disclosure Statement. Delay in mailing the Notice of Hearing was attributable to
efforts by the Proposing Creditor to determine who the creditors of the Debtor actually are. This matter is
addressed further below.

by Merchants Bonding Company and the Debtor. The objections to the Disclosure Statement are not well founded and the Disclosure Statement should be approved, with the modifications set forth hereinafter. This response is supported by the following Memorandum of Points and Authorities which is incorporated herein by reference and the entire record before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

1. <u>Mr. Richardson's Notice Objections.</u> Mr. Richardson's general objection is that he did not receive notice of the Plan and Disclosure Statement, and neither, he asserts, did Alejandro Reynoso, at least until the day before objections were to be filed. Mr. Richardson apparently concedes that the Notice of Hearing, the Plan and the Disclosure Statement were mailed to the Court appointed Trustee, Mr. Ulrich.[2] How one would serve the Debtor pursuant to Bankruptcy Rule 3017 except by serving the Trustee is not clear from Mr. Richardson's argument.

---

[2] Obviously the Trustee did not give Mr. Richardson a copy of the Notice of Hearing, Disclosure Statement or Plan although the Trustee received these documents on or around September 10, 2007. In his Motion To Extend Time For Objecting To Disclosure Restatement, Mr. Richardson sets forth a litany of difficulties including the fact that "on Thursday, September 27, 2007, counsel had his first opportunity to meet with his client" and that this "client" was to provide "detailed information regarding the Disclosure Statement". The Trustee had the documents at least two weeks before September 27, 2007 and surely could have met with Mr. Richardson if he had wished to do so. (Subparagraph 13(D) of the Motion To Extend Time For Objecting To Disclosure Statement.) Furthermore, Mr. Richardson is a member of the bar of this Court and undoubtedly has access to the filed documents electronically.

Mr. Richardson asserts that the Proposing Creditor "was made aware by order of the Court that undersigned (Richardson) was appointed counsel for the Debtor".[3] There is an Order of this Court dated July 26, 2007 which states: "The application to represent the debtor in the bankruptcy case is granted..." referring to Mr. Richardson's motion to be appointed attorney for the Bankruptcy Estate. Mr. Terry Dake has similarly been appointed. The Trustee now has two lawyers appointed to represent him. It is up to the Trustee to determine when to meet with his counsel and which counsel he wishes to consult. Notice to the Trustee is adequate, and there appears to be no requirement that to notice the Debtor it is necessary to notice all of the Trustee's appointed counsel.

Mr. Richardson asserts that Mr. Reynoso was not given notice because notice was not mailed to his current address. In order to determine to whom notice should be given under the Bankruptcy Code, the Proposing Creditor reviewed the Claims Register. Mr. Reynoso has filed two claims in this Matter.[4] In both of these claims, the address to which the Notice of Hearing was mailed is the address listed by Mr. Reynoso. The Notice of Hearing was mailed to Mr. Reynoso as a potential general creditor and

---

[3] Paragraph 7 Motion To Extend Time For Objecting To Disclosure Statement.

[4] Claims Number 82 and Number 87, both filed on October 31, 2006.

shareholder of the Debtor, not as the Debtor since there is no longer a Debtor-In-Possession.[5]

It is improper to disseminate to the creditors and shareholders an unapproved proposed Disclosure Statement. See In re Rook Broadcasting of Idaho, Inc., 154 B.R. 970 (Bankr. D. Idaho 1993).[6] Bankruptcy Rule * dictates that the proposed Disclosure Statement must be disseminated only to specific parties in interest unless others request a copy in writing. This is an important provision intended to minimize confusion among creditors and shareholders before a Disclosure Statement is approved. Mr. Reynoso is not a member of the limited group to whom the Proposing Creditor could properly send the Disclosure Statement, and neither is Mr. Richardson unless the Trustee decides to seek advice and representation from Mr. Richardson. The claim by Mr. Richardson that he was somehow denied access to the Disclosure Statement in a timely fashion belies the limitations on dissemination of the Disclosure Statement until it is approved.

---

[5] It must be remarked that the Claims Register reveals substantially more debt than is listed by the Debtor in the Reports filed with this Court and the United States Trustee. Attached as Exhibit A is a reconciliation of the actual indebtedness of the Estate based on the claims filed and the post-petition debts listed in the Reports. Although the Reports indicate total pre-petition debts of the Estate are approximately $1.422 Million, the actual pre-petition claims exceed $2.5 Million. The Proposing Creditor sought from the Trustee assistance in reconciling this discrepancy, but was unsuccessful in obtaining any meaningful information. See Exhibit B hereto, Memorandum of Proposing Creditor dated September 9, 2007 and response from Mr. Dake dated September 14, 2007. Therefore, based on the directive of the Trustee, through counsel, the Notice of Hearing was sent to every one of the creditors and interest holders who appear in the Claims Register even though the Claims Register and the Reports are not consistent.
[6] Cf. 5 L. King, Collier on Bankruptcy Paragraph 1125.03[3][b] (15th ed. 1991)

The notice issue appears to be moot in light of the fact that Mr. Richardson has sought and obtained additional time to file objections.[7]

1.   Mr. Richardson's Standing Objections. Mr. Richardson argues that the Proposing Creditor is not a "party in interest" because he is the proposed purchaser, because he is not a creditor within the definition of 11 U.S.C. Section 101(10)(A), and because the interest of the Proposing Creditor is as an administrative claimant.

The only case cited by Mr. Richardson is In re Rook Broadcasting of Idaho, Inc., 154 B.R. 970 (Bankr. D. Idaho 1993). The case is cited for the proposition that because the Proposing Creditor is also a proposed purchaser there is no standing to propose a reorganization plan. Even a cursory reading of the cited case shows it does not stand for such a proposition. In re Rook confirmed that a party who purchased a claim and became a creditor (even though the claim was acquired post-petition for the express purpose of acquiring standing) was a party in interest entitled to file a plan. A far more applicable case is In re Dakota Rail, Inc., 946 F.2d 82 (8th Cir. 1991) in which a proposed purchaser was permitted to propose a plan of reorganization even though the trustee withdrew initial joinder in the

---

[7]  The Court granted Mr. Richardson an extension of time to file objections through September 28, 2007. Mr. Richardson has requested more time, but it is not clear if the Court has granted this second extension request. The Proposing Creditor will respond to all objections posed by Mr. Richardson when they are filed, and there is no intent by the Proposing Creditor to restrict Mr. Richardson from filing all the objections he wishes. The Proposing Creditor only hopes such further objections will have substance and not be interposed for delay.

proposal, clearly illustrating that intent to purchase the assets of the debtor is

no bar to proposing a reorganization plan. Reference should also be made to

In re Crescent Manufacturing Company, 122 B.R. 979 (Bankr. N.D.Ohio

1990) where it was held that the mere desire to purchase the assets of the

bankruptcy estate, alone, does not confer standing to submit a reorganization

plan.[8] In summary, the mere desire to purchase the assets of the bankruptcy

estate does not alone confer standing, but the desire to purchase the assets of

the bankruptcy estate does not remove standing once established.

The reference to the definition of a "creditor" in 11 U.S.C. Section

101 is far from dispositive, as Mr. Richardson seems to suggest. The law is

well delineated in In re Chandler Airpark Joint Venture I, 163 B.R. 566

(Bankr. D.Ariz. 1992):

> Under the Bankruptcy Code, the concept of who is an interested
> party is an expandable one. The court should, on a case-by-
> case basis, determine whether a party has a sufficient stake in
> the outcome of a case so as to require its representation. In re
> River Bend-Oxford Associates, 114 B.R. 111(Bankr. D. Md.
> 1990). As one Court has noted, the notion is an elastic and
> broad one designed to give a Court great latitude to insure fair
> representation of all constituencies impacted in any significant
> way by a Chapter 11 case." In re Johns-Manville Corp., 36
> B.R. 743,754 (Bankr. S.D.N.Y. 1984). While these courts were
> specifically referring to the use of the term "party in interest" in

---

[8] Cf. In re Allegheny International, Inc., 118 B.R. 282, 286 (Bankr. W.D. Penn. 1990) and In re American
3001 Telecommunications, Inc., 79 B.R. 271, 272 (Bankr. N.D. Texas 1987) both concluding that entities
unrelated to the Debtor seeking control of the debtor were parties in interest and their purchase of pre-
petition claims to establish party in interest status was not a bar to proposing a reorganization plan which, if
adopted, would result in a transfer of the debtor to the proposing creditors.

Section 1109(b) of the Code, dealing with the right to appear
and be heard in Chapter 11 cases, the definition under Section
1121(c) should be the same. 5 L. King, Collier on Bankruptcy
Paragraph 1109.02[3] (15th ed. 1991)."[9]

Finally, Mr. Richardson suggests that the Proposing Creditor is not a

"party in interest" on the basis of his approved administrative claim. It is

clear that having an administrative claim is sufficient to qualify the

Proposing Creditor as a party in interest. See In re First Humanics Corp,

124 B.R. 87 (Bankr. W.D. Mo. 1991).[10]

The situation presented here is somewhat unique. At one time the

Debtor had assets sufficient to satisfy all claims, both pre-petition and post-

petition. Now, only assets sufficient to satisfy a portion of the post-petition

claims remains. The Petition in Bankruptcy was filed on June 10, 2005. No

plan of reorganization has been suggested by the Debtor, even though four

months ago a Chapter 11 trustee was appointed[11]. The shareholders no

longer have a stake in the outcome, shareholders equity having been

---

[9] There is a considerable body of case law on this subject which the Proposing Creditor will refrain from
citing here. A review of 5 L. King, Collier on Bankruptcy Paragraph 1109.02[3] and Paragraph 1121.05
(15th ed. 1991) is worthwhile in this regard. It is clear that the term "including" in Bankruptcy Code
Section 1121(c) is not exclusive as Mr. Richardson seems to suggest. Only those cases bearing most
directly on the issues presented by the Richardson objections are cited here for the sake of brevity here.
[10] The court cited the fact that the proposing creditor was a significant administrative claimant in holding
the proposing creditor to be a party in interest, even though the debtor remained current on payments to the
proposing creditor and the administrative claims were expected to be paid in full by the effective date of the
plan.
[11] At the hearing on Mary 24, 2007 Mr. Richardson represented to the Court that he could file a
reorganization plan for the Debtor in 60 days. No such plan of reorganization has been forthcoming. In an
e-mail dated June 8, 2007 the Trustee indicated to the Proposing Creditor that he would be "working to see
if a plan can be filed in the next 60-90 days". No plan has been proposed by the Trustee. A copy of the e-
mail is attached hereto as part of Exhibit B.

extinguished by operating losses[12]. No pre-petition creditor can expect any

payment from the Bankruptcy Estate either from continuing operations or

from liquidation.[13] Thus, there is no other group which has any incentive to

file a reorganization plan on behalf of the Debtor except the administrative

claimants because they alone have a pecuniary stake in the proceedings. The

position of the administrative claimants is being eroded by the accrual of

post-petition fees and costs, and importantly liquidation and breach of the

lease on the premises occupied by the Debtor would give rise to a large

claim which would adversely affect on the administrative claimants. Unless

the Proposing Creditor, as an administrative claimant, can propose a plan of

reorganization, the only claimants left with a stake in the Debtor will be

precluded from taking any action to preserve their position.

The Court must judge who is a party in interest on a case-by-case

basis. In <u>In re First Humanics Corp.</u>, <u>supra.</u> the Court recognized that the

question of who is a party in interest must be determined in light of the

specific reorganization context for which the determination is sought. The

---

[12] According to the Report filed with this Court and the U.S. Trustee for the month of August, 2007, the shareholders had a negative shareholders' equity of $366,158. However, the actual negative shareholders' equity would be in excess of $1.5 Million if the claims filed with the Court are considered. See Exhibit A hereto. The shareholders' equity is even more negative if all post-petition claims are considered, such as the claims of the Arizona Department of Revenue which have been excluded from the post-petition liabilities in the Report.

[13] See the liquidation analysis in the proposed Disclosure Statement and the Reports from the Petition Date forward indicating continuing operating losses of the Debtor..

Court recognized the underlying basis for making the determination in each

case:

> By allowing only parties in interest to be heard regarding a
> reorganization, the Code seeks to advance the goal of speedy
> and efficient reorganization. In re Public Service Company of
> New Hampshire at 554 (citing In re Hyde Park Partnership, 73
> B.R. 194 (Bankr. N.D. Ohio 1986), and In re Charter Co., 50
> B.R. 57 (Bankr. W.D. Tex. 1985).

> Submission of HCCs plan will not unduly prejudice or delay
> any party, nor will it impede the polices of speed and
> efficiency. HCC is not attempting to slow or block the
> debtor's reorganization process. HCC is prepared to offer its
> disclosure statement and plan on the same timetable as
> debtor's...By allowing HCC to go forward with its plan, the
> equally important policies of providing alternatives to voting
> creditors and maximizing returns to creditors are promoted.

The same is true of the Proposing Creditor here. In this case, if the

Proposing Creditor cannot file who has an interest in doing so? If not the

proposed Plan of Reorganization, then what plan? As in In re River Bend-

Oxford Associates, 114 B.R. 111 (Bankr. D. Md. 1990), the Proposing

Creditor is a member of the only class that has any incentive to try to salvage

what can be salvaged here and the only class that has a direct financial

interest in doing so.

The purposes behind the statutory scheme of Bankruptcy Code

Section 1121 (c) in which the party in interest question arises was rightly

articulated in In re River Bend-Oxford Associates:

The purpose of Chapter 11…is to give the financially distressed debtor a breathing spell in which to accomplish rehabilitation. In re CLDC Management, 58 B.R. 181,182 (Bankr. N.D. Ill. 1985). A Chapter 11 plan facilitates the above purpose by providing the framework for rehabilitation, or distribution if the plan contemplates liquidation. Time frames within Chapter 11 insure that creditors will not endure an unreasonable delay upon a debtor's filing for relief under the Bankruptcy Code. See Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94,102 (3rd Cir. 1988). Section 1121 is designed to afford a debtor an exclusive period in which to propose a plan. After the exclusive period has run, the Code provides that parties in interest may file plans. This provision furthers the purpose of a rehabilitation, while recognizing that Chapter 11 is not a mechanism through which a debtor may operate indefinitely without attempting to reorganize. See In re Witt, 60 B.R. 556,561 (Bankr. N.D. Iowa 1986).

The Plan advances the process in this case, and the Proposing Creditor is undoubtedly a party in interest. The Plan is the only option developed after over two years of losing operations of the Debtor in Chapter 11. Proposal of the Plan by the Proposing Creditor is fully consistent with the intent of the Bankruptcy Code while discouraging its adoption is contrary to such intent.

2.    Mr. Richardson's Other Deficiencies in Disclosure Statement.

Generally, Mr. Richardson asserts that "assertions too numerous to even enumerate are included in the disclosure statement without any foundation at all. Moreover, these assertions are made without verifying their accuracy with the Debtor or counsel for the debtor."

Case 2:05-bk-10489-GBN    Doc 450    Filed 10/01/07    Entered 10/02/07 15:15:44    Desc
Main Document    Page 10 of 22

The definition of "adequate information" recognizes that the proponent of a plan may not have access to accurate present or past financial data, particularly in the case of a plan proposed by a creditor or other party in interest. Thus, section 1125(a)(1) qualifies the concept of "adequate information" so as to require only such information as may reasonably be furnished, particularly if the debtor's books and records are unavailable, the accuracy of the books and records are in doubt or the debtor is under the control of a trustee who is unable to produce the kind of information concerning the debtor's business which ordinarily might be expected from a debtor's management. 5 L. King, Collier on Bankruptcy Paragraph 1125.02[1][b] (15th ed. 1991). See In re Werth, 8 C.B.C.2d 480, 29 B.R. 220 (D.Colo. 1983) and In re Stanley Hotel, Inc., 5 C.B.C.2d 64, 13 B.R. 926 (Bankr. D. Colo. 1981).

A vast majority of the information contained in the proposed Disclosure Statement is gleaned from the Reports filed by the Debtor with this Court and the U.S. Trustee. Some information was taken from information available to the Proposing Creditor from other sources. Most importantly, the Proposing Creditor has carried on an extensive communication with the Trustee seeking clarification of inconsistencies in the Reports and seeking information which in large part the Trustee has not

been able to provide. Attached as Exhibit B is a copy of this correspondence and communications dating back to May, 2007. These communications negate the assertion by Mr. Richardson that the Proposing Creditor has made assertions which are unfounded and without verifying their accuracy.

Of particular import in considering the validity of Mr. Richardson's objections is a series of communications between the Proposing Creditor and the Trustee during September, 2007. On September 2, 2007 the Proposing Creditor requested the Trustee provide any information which might tend to show that any of the statements made in the proposed Disclosure Statement needed to be modified in order to accurately represent the condition of the Debtor. The Proposing Creditor indicated he would be available to meet to discuss any concerns of the Trustee with respect to the proposed Disclosure Statement. The Trustee did not respond to the September 2, 2007 communication.

On September 9, 2007 the Proposing Creditor sent to the Trustee a Memorandum setting forth various issues relating to the liabilities of the Debtor. The Memorandum noted that it was very important to reconcile the liabilities of the Debtor in the context of the Disclosure Statement and Plan.

On September 14, 2007 the Proposing Creditor communicated to the Trustee that he would be available to meet and discuss the questions

previously raised, obviously including any concerns the Trustee might have about the Disclosure Statement. On September 14, 2007 the Trustee responded, through Mr. Dake, that it would not be a good use of the resources of the estate to meet stating: "I believe we have responded as best we can to your questions".

It is apparent that the Proposing Creditor, relying on the filed Reports of the Debtor and such information as could be gleaned from the Debtor, has made adequate information available in the proposed Disclosure Statement. If there are objections to specific statements, it is incumbent now on the Trustee to bring forth specifics so the Proposing Creditor can make modifications which would be necessary to provide the parties in interest an opportunity to make an informed judgment about the proposed Plan.

Mr. Richardson's objections are far from specific. Each will be treated in turn.

    a.    <u>Decline in business activity.</u>  No reasonable reader can review the results reported by the Debtor included in the schedules attached to the Disclosure Statement without concluding that the business activity of the Debtor has declined. The Proposing Creditor made every effort to factor out the effects of losses arising from the GC Division by analyzing the results of the Debtor's business after the GC Division ceased to operate and

the losses on the Yuma Projects were already reported. The numbers speak for themselves, and it cannot be that the Trustee is arguing now that over the period since the GC Division ceased operations the EDM Division, the only remaining operations of the Debtor, have increased.

b. CNA. Mr. Richardson argues that there is no basis for the statements in the proposed Disclosure Statement about CNA Insurance. The suggestion that the Proposing Creditor had anything to do with improper reporting related to CNA is preposterous. The Proposing Creditor resigned as Chief Financial Officer of the Debtor in January, 2006 and the flood which gave rise to the CNA claims in question did not occur until September, 2006. In the interest of full disclosure, it seems necessary to give the parties in interest the information that CNA is apparently now investigating the claims submitted by the Debtor and may make claims in the future which would be administrative claims. Failure to mention this development could mislead the creditors.

c. Other lending in the post-petition period. The statements in the proposed Disclosure Statement about the Notes Receivable listed on the Debtor's Reports are supported by the Reports themselves. As of the Petition Date the Notes Receivable were $242,000 representing the promissory note owed by Alejandro and Cynthia Reynoso to the Debtor.

This promissory note drooped out of the balance sheet of the Debtor from March until July, 2007. Thereafter, the Notes Receivable increased steadily reaching a total of $375,808.67 by the end of August, 2007. The only Note Receivable ever listed, to the knowledge of the Proposing Creditor, was owed by Alejandro Reynoso and Cynthia Reynoso. The asset account "Notes Receivable" cannot increase without some additional lending by the Debtor in the post-petition period. If these loans were not to Alejàndro Reynoso or members of the Reynoso family, to whom were they made? The Trustee has not provided any contrary information. If these loans were made to others, the Proposing Creditor will gladly make the change necessary to clarify who now owes the Debtor $375,808.67.

        d.     Leasehold Improvements. The issue of how to value the assets of the Debtor is raised obliquely by Mr. Richardson in attacking the valuation of the leasehold improvements included in the Net Property, Plan and Equipment on the Debtor's balance sheet. This is a somewhat complex issue, but if the Trustee has a contrary valuation it should be brought forward along with the supporting data. The Proposing Creditor has attempted to get this information from the Trustee. On July 25, 2007 the Proposing Creditor wrote a Memorandum to the Trustee addressing the June Report and various notes therein dealing with adjustments to the book value

of the assets of the Debtor in light of the flood and CNA payments. From
the notes in the June Report it appears there was a write off of certain assets
and a reconstruction of the book value of others. After the flood the entire
premises of the Debtor were stripped to the bare walls and rebuilt with
proceeds from CNA. There were expenditures for reconstructing walls, air
conditioning systems, carpeting, and many other items in the building which
cannot be liquidated by the Trustee in a liquidation scenario. As indicated in
the Memorandum of July 25, 2007 the \$230,000 indicated as having been
previously taken into income in December, 2006, when no such entry is
discernable, likely reflects amounts capitalized as leasehold improvements.
The response of the Trustee to the inquiries of the Proposing Creditor was
dated July 26, 2007 from the Trustee. The Trustee simply said: "There is no
reason to go back and rehash the accounting issues from before May". If the
Trustee now wishes to clarify the portion of Property, Plant and Equipment
that represents leasehold improvements, the Proposing Creditor will gladly
amend the Disclosure Statement accordingly.[14]

        e.     History of the Proposing Creditor.  Mr. Richardson
continues to bring up matters dating back over a decade about the Proposing
Creditor. If the Court believes these issues must be addressed in the

---

[14] The communications referenced are included in Exhibit B.

Disclosure Statement, then at least they should be stated accurately. The frank fact of the matter is that the Proposing Creditor has never been indicted for nor convicted of any crime.[15] The Proposing Creditor was suspended from the practice of law, but has been fully reinstated for many years and is a member in good standing of the bar of the Supreme Court of North Carolina, several Federal District Courts, the Fourth Circuit Court of Appeals, and the United States Tax Court. The Proposing Creditor does not believe it adds anything to the proposed Disclosure Statement to address these very old issues which have no bearing on this matter.

3.    Objections Of Merchants Bonding Company.

       a.    Lack of Specificity. Merchants Bonding Company suggests that there is information "one would expect in a disclosure statement describing a sale of this magnitude, yet is absent" in the Disclosure Statement. The items listed in a nonexclusive recitation of purported shortcomings are the closing date, details about financing, amount of cash to be paid to the Debtor, terms of any promissory notes, and a copy of a purchase agreement. Upon review, the Proposing Creditor agrees that the description of the transaction proposed should be expanded in the Disclosure Statement. Some aspects of the transaction cannot be addressed more

---

[15] It is axiomatic that a withdrawn guilty plea has no legal significance.

specifically, but some further explanation is warranted. Therefore, attached hereto as Exhibit C is language which the Proposing Creditor proposed to included in the Disclosure Statement to address the concerns of Merchants Bonding Company as to specificity. It is obviously not possible to provide a purchaser agreement or sales contract under the current circumstances.

  b. <u>Conflict Between Plan and Disclosure Statement as to Purchase Price.</u> The "purchase price" includes payment of certain liabilities and assumption of others. Included in the purchase price is assumption of the lease. There is, however, no conflict between the Plan and the Disclosure Statement as to the purchase price. On page 35 of the Disclosure Statement the total value received by the Debtor, including the assumption of the lease to which the Debtor is obligated, is set forth. In Article 5 of the Plan the purchase price is broken down to include payments to claimants and assumption of the lease. The Proposing Creditor believes that the Disclosure Statement accurately describes the components of the purchase price and that there is not a conflict between the Plan and the Disclosure Statement in this regard.

  c. <u>Merchants' Super-Priority Claims.</u> It is the contention of Merchants Bonding Company that the post-petition liens and super-priority claims granted pursuant to various stipulations and orders are not included in

any class of creditors addressed in the Plan. The recitation of how these
claims came into existence and the fact that Merchants Bonding Company
filed a $755,272.67 claim (Claim No. 76) which does not make clear
whether the post-petition claims are included therein demonstrate the
complexity associated with the position of Merchants Bonding. It is surely
understandable why the Proposing Creditor may not have properly described
the claims. However, the Proposing Creditor did recognize the claims of
Merchants Bonding Company and intended that all post-petition claims of
Merchants Bonding Company would be included in Class 1 of creditors set
forth in the Plan.

As best the Proposing Creditor can determine, Merchants
Bonding Company claims a super-priority claim of approximately $69,000,
and a replacement lien of $66,903.19.[16] Class 1 of Creditors in the Plan
clearly includes these claims, but the Proposing Creditor proposes to change
the definition of Class 1 to assure Merchants Bonding Company that these
claims are included. Attached as Exhibit C hereto is the proposed amended
language.

---

[16] The Proposing Creditor has requested a meeting with Mr. Berens to clarify the rather complex claims of
Merchants Bonding Company. The Proposing Creditor has assured Mr. Berens that the intention is to pay
the post-petition claims of Merchants Bonding Company in full in cash at the effective date of the Plan.
See Exhibit * attached hereto.

Merchants Bonding Company sees a conflict between Articles 3 and 4 of the Plan and the Disclosure Statement description of the Plan. The classification of claims in Article 3 of the Plan encompasses all claims. All claims below Class 3 will receive nothing under the Plan. These lower classes of creditors are not impaired. Therefore, Article 4 which addresses impaired classes is not inconsistent with Article 3 dealing with all classes of creditors. This distinction between the first three classes which will be paid in full and the lower classes of creditors which will receive nothing under the Plan and which are unimpaired classes is maintained in the Disclosure Statement and the Proposing Creditor believes the description of these matters in the Disclosure Statement is adequate.

d.  Confirmability as a Matter of Law.  The intention of the Proposing Creditor is to pay the secured and super-priority claims of Merchants Bonding Company in cash at the effective date of the Plan of Reorganization. The changes in definition of Class 1 Claims in the Plan and Disclosure Statement described above removes the objection.[17] As to the objection that the administrative claimants must be paid in full unless they agree to other treatment is fully addressed in the Disclosure Statement.

_____

[17] See Exhibit D hereto.

## Bar Date For Administrative Claims

In order to effectuate the Plan it will be necessary for the Court to establish a bar date for administrative and any other post-petition claims. The Proposing Creditor suggests that such bar date be established by order of the Court on the date established for the hearing on confirmation of the Plan, and that an addition to the Disclosure Statement to reflect the Court's order in this regard should be added.

## CONCLUSION

The Proposing Creditor has been guided by the desire to fully protect all creditors which still have a stake in the Debtor. The Disclosure Statement, with the modifications set forth herein, is believed to give a full and adequate description so that those affected can make an informed and intelligent judgment as to whether to accept the Plan and accept other treatment thereunder than that to which they may be entitled under the Bankruptcy Code. The Proposing Creditor is prepared to make whatever changes the Court may deem necessary so that the Disclosure Statement is full, complete and accurate.

RESPECTFULLY SUBMITTED this 1st day of October, 2007.

Thomas L. Kummer, pro se