C-GBN

Thomas L. Kummer
2164 Siesta Avenue
Las Vegas, Nevada 89169
775-338-3705
reno4829@aol.com
*Pro Se*

FILED

2007 NOV 20 A 9:30

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

## AT PHOENIX

| In the Matter of: | ) | Case No. 2:05-bk-10489 GBN |
|---|---|---|
| | ) | |
| AR Utilities Specialists, Inc., an | ) | Chapter 11 |
| Arizona Corporation | ) | |
| | ) | Motion To Require Trustee |
| | ) | And Debtor To |
| Debtor | ) | File Reports In Accordance |
| | ) | Generally Accepted |
| | ) | Accounting Principals And |
| | ) | To Postpone Consideration Of |
| | ) | Proposed Disclosure Statement |
| | ) | |

NOW COMES THOMAS L. KUMMER, a party in interest ("Kummer"), and moves the Court to order the Trustee and the Debtor to file Business And Industry Monthly Operating Reports ("Reports") for the months of June, July, August, September and October, 2007 with the Court and the United States Trustee which conform to Generally Accepted Accounting Principals. Furthermore, Kummer moves the Court to continue the hearing scheduled for December 20, 2007 with respect to the Debtor's

1

proposed disclosure statement until such time as the Trustee and Debtor file Reports accounting for the assets, liabilities, income and expenses of the Debtor in accordance with Generally Accepted Accounting Principals. This motion is more fully set forth in and is supported by the following Memorandum Of Points And Authorities.

DATED November 19, 2007.

*Thomas L. Kummer*

Thomas L. Kummer, *pro se*

## MEMORANDUM OF POINTS AND AUTHORITIES

Kummer is a party in interest.[1] (Docket #454) As a party in interest, Kummer is entitled to inquire as to the operations of the Debtor and the administration of the Estate. The Trustee has the obligation to provide information requested by a party in interest with respect to the administration of the Estate. Bankruptcy Code Section 1106(a)(1) and Bankruptcy Code Section 704(7).[2]

1.  <u>Kummer's Inquiries Of The Trustee And The Debtor On November 16, 2007.</u> There is a long history of Kummer's unsuccessful attempts to

---

[1] Kummer's status as a party in interest was confirmed by the Court at hearings on October 5 and November 15, 2007.

[2] Bankruptcy Rule 2004(a) provides that the Court may order an examination of any entity upon motion of a party in interest. Kummer's Motion For 2004 Examination of the Trustee, Mr. Reynoso, and Mr. Riley is pending before the Court. See Rule 2004 of the Federal Rules of Bankruptcy.

2

obtain information about the Estate from the Trustee and the Debtor. Most recently Kummer requested information concerning the Reports filed by the Debtor and the Trustee for October, 2007 and about the proposed reorganization plan of the Debtor. On November 16, 2007 Kummer wrote to the Trustee and Mr. Richardson, attorney for the Debtor, requesting information about the Purchase and Sale Agreement which forms the basis of the Debtor's proposed reorganization plan and about the fact that the Reports for August, September, and October, 2007 appear to include income from performing services for Central Arizona Project ("CAP") but not the expenses associated therewith.

In response to Kummer's inquiry Mr. Richardson made hand written notes on the letter.[3] A copy of Kummer's letter with Mr. Richardson's responses is attached as Exhibit A. Subsequently, Kummer wrote a second letter on November 16, 2007 to the Trustee and the Debtor upon which Mr. Richardson made addition hand written notes. This second letter with Mr. Richardson's notes is attached as Exhibit B. Finally, the Trustee responded through counsel in an e-mail which is attached as Exhibit C along with Kummer's response thereto.

---

[3] These hand written notes are very difficult to read and some make little sense, but they apparently reflect the position of the Debtor and the Debtor's counsel.

3

Three extremely important points emerge from the responses of Mr. Dake on behalf of the Trustee and Mr. Richardson on behalf of the Debtor to Kummer's inquiries:

First, Mr. Richardson stated that at the consummation of the Purchase and Sale Agreement only $100,000 in cash would be available to the Estate to pay administrative claims.[4] When Kummer inquired how this $100,000 could satisfy all of the administrative claimants at the effective date of the Debtor's reorganization plan in cash Mr. Richardson stated: "Hire a BK atty and he or she w/ explain it."[5] Mr. Richardson's response confirms what Kummer suspected: The Debtor's proposed plan of reorganization is not confirmable because it does not provide for payment of all administrative claims in cash at the effective date as required by Bankruptcy Code Section 1129(a)(9). Kummer does not need to hire anyone to explain to him that $100,000 in cash cannot pay $900,000 in claims, even in the realm of Bankruptcy.

Second, Mr. Richardson responded that amounts owed to Subcontractors are not included as expenses in the Income Statement of the Debtor because: "I understand that these are offsets to assets rec. entries and will be applied to costs of sales when receivables are pd & when subs are

---

[4] See Exhibit A page two confirming that only $100,000 in cash will be paid to the Estate at closing of the Purchase and Sale Agreement and that there is no other consideration for the proposed sale contemplated.
[5] This response is found on page two of Exhibit B.

4

paid".[6] In further explanation Mr. Richardson indicated that a "cash basis of accounting" is being used by the Debtor to postpone recognition of the Subcontractor costs as expenses while including the income in Sales.[7] Mr. Richardson further defends the use of a "cash basis of accounting" in responding that Kummer is wrong in suggesting that the Reports filed with the U.S. Trustee and the Court are to conform to Generally Accepted Accounting Principals and that a "cash basis of accounting" is not acceptable.[8] According to Mr. Richardson, use of this "cash basis of accounting" is absolutely fine and the Reports of the Debtor are "fine".[9]

Third, the Trustee wants no inquiry about the Reports or operations of the business from the parties in interest. Apparently, the Trustee agrees with the Debtor that use of a "cash basis of accounting" to report income but exclude expense in the Reports to the Court is just fine.[10] Mr. Dake's communications simply state in essence that Kummer should quit asking questions and leave the Trustee and the Debtor alone. The Trustee did not find the responses to Kummer's inquiries deficient in any way. In fact, the Trustee found it exemplary that Mr. Richardson graced Kummer with his hand written responses. Frankly, this response by

---

[6] Note at the bottom of page three of Exhibit A.
[7] Note of Richardson on page four of Exhibit A.
[8] Note of Richardson on page two of Exhibit B, second full paragraph.
[9] Note of Richardson on page four of Exhibit B.
[10] See Exhibit C in its totality.

professional lawyers and accountants stuns Kummer. That the Trustee and the Debtor will not take five minutes to answer simple questions about the operation of the Debtor is incredible. The fact that the Trustee finds any inquiry objectionable, and believes that if there are serious errors in the Reports he signed under penalty of perjury there is no obligation to correct the errors is beyond anything Kummer has encountered in over thirty years as a member of the legal profession.

1. <u>Why The Reports Are Important.</u> Pursuant to Bankruptcy Code Section 704(8) and Rule 2015 of the Federal Rules of Bankruptcy the Trustee is required to file the Reports. Rule 9011 makes clear that the persons signing the Reports are "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the Reports are true and not being presented for any improper purpose. The Reports themselves contain the following certification: "I CERTIY UNDER PENALTY OF PERJURY THAT THE FOLLOWING MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE".

Obviously, the Bankruptcy Code and the Federal Rules of Bankruptcy take the Reports seriously, and for good reason. The Reports are the only

information routinely provided by the Debtor and the Trustee from which creditors can glean any understanding of the position of the Debtor. It is obvious that conducting a Rule 2004 Examination is cumbersome and difficult to achieve,[11] and if the Trustee refuses to provide meaningful information the creditors are left with only the Reports.[12]

In this case the accuracy of the Reports and particularly the Income Statements is highlighted because there has been a proposed plan of reorganization filed by the Debtor and the adequacy of the Debtor's proposed disclosure statement is coming on for hearing on December 20, 2007. The Debtor's proposed reorganization plan involves a sale of all of the assets of the Debtor to Mr. Alejandro Reynoso pursuant to a Purchase and Sale Agreement to which the Trustee has already assented. The proposed reorganization plan calls for payment of almost all of the purchase price for the assets of the Debtor over six ears and the future payments are dependent entirely on the future success of the business. The proposed disclosure statement waxes on about the success of Mr. Reynoso in operating the Debtor's business while the Debtor is in Chapter 11, and

---

[11] In this case Kummer has been seeking information from the Trustee since June and has sought a Rule 2004 Examination which has not yet been granted. In the meantime the Court ruled on October 5, 2007 that Kummer is a party in interest, and the matter was again the subject to a hearing on November 15, 2007. Kummer has made no progress in obtaining meaningful information from the Debtor and the Trustee, and the Trustee has adopted the position that Kummer should quit asking questions. See Exhibit C.

[12] The Trustee has a clear mandate to provide meaningful information about the Debtor and its operations, but that has not made any difference here. See Bankruptcy Code Section 704(7).

attached to the proposed disclosure statement is an Income Statement which is the only support for the assertions as to Mr. Reynoso's past success. The entire proposed reorganization plan hinges on future success of Mr. Reynoso and claims past success as the basis for proceeding with no new money from Mr. Reynoso in the purchase transaction.

Thus, the only way any creditor can evaluate the Debtor's proposed reorganization plan is to look at the Reports and the Income Statement attached to the proposed disclosure statement which comes directly from the Report for September, 2007. It is impossible to assess the Debtor's reorganization plan without accurate Reports.[13]

If the Profit From Operations is substantially overstated in the Reports and in the Debtor's proposed disclosure statement there is real harm to the creditors and they are likely to be misled. Since the Trustee and the Debtor are bound together on a course to make sure Mr. Reynoso obtains the assets of the Debtor regardless of what anyone else is willing to pay for them, there is great incentive to show more Profit From Operations to support the premise that Mr. Reynoso will be able from the operating income of the

---

[13] The adequacy of the Debtor's proposed disclosure statement and plan is not the subject here. It is worthy to note, however, that the proposed disclosure statement utilizes the information contained in the Reports to support the proposition that future revenues will be available to make future payments to the Trustee in the sale of the Debtor's assets to Mr. Reynoso. The proposed disclosure statement is inadequate in reciting the history of massive operating losses of the Debtor under Mr. Reynoso's management since the Petition Date.

8
Case 2:05-bk-10489-GBN    Doc 489    Filed 11/20/07    Entered 11/21/07 11:30:18    Desc
Main Document    Page 8 of 19

business to make the payments required under the Purchase and Sale Agreement going forward.

The accuracy of the Reports matters very much here, and without accurate Reports the creditors have no way of evaluating the Debtor's proposed reorganization plan. Unless the Reports are amended to accurately reflect the facts relating to the Debtor, no creditor can be expected to raise cogent objections to the Debtor's reorganization plan and disclosure statement or decide that they are not objectionable.

2. <u>The Debtor Has Sustained Substantial Losses Since The Appointment Of The Trustee Not Operating Profits As Reflected In The Reports And Claimed In The Debtor's Proposed Disclosure Statement.</u>

Mr. Richardson has admitted that the Debtor is using a "cash basis accounting" in preparing the Income Statements included with the Reports to treat substantial Subcontractor costs incurred by the Debtor. These Subcontractor costs relate to work performed by the Debtor for Central Arizona Project ("CAP"). They are referenced throughout the Reports for the months of August, September, and October with respect to the payables

9

of the Debtor, but they do not appear as expenses on the Income Statements.[14]

If the expenses incurred to Subcontractors are taken into account along with the amounts claimed by Mr. Ulrich, Mr. Dake and Mr. Richardson, none of which have been accrued as administrative costs, the Profits From Operations for August, September and October are affected in the extreme. While the Income Statements included in the Reports and upon which the Debtor's proposed Disclosure Statement is based reflects Profits From Operations of $199,067.29 for the months of June, July, August, September and October there was actually a Net Operating Loss of over $159,000. This is a discrepancy of some $358,000 in the five month period.[15]

3. <u>The Debtor's Use Of "Cash Basis Accounting" Is Erroneous.</u> The Debtor, through counsel, claims to be using a "cash basis of accounting" in calculating Profits From Operations in the Income Statements included in the Reports for August, September, and October. The Debtor offers this as

---

[14] There seems to be little doubt that the income from CAP has been fully accrued as a receivable and as Sales, so the income from CAP is included in the Income Statements while the expenses are disregarded. Attached as Exhibit D is a schedule which shows the amount of Sales attributable to CAP and Sales attributable to other customers according to the Reports for August, September, and October, 2007. August is the first month in which CAP sales and expenses should have been accrued according to the notes in the Reports for those months. See Note to "Status of Assets" in the August Report indicating that accounts receivable include invoices to CAP totaling $100,166.92; Note 1 to "Stats of Assets" on the September Report indicating that accounts receivable include invoices to CAP totaling $146,167.62; and Note 1 to the "Status of Assets" in the October Report indicating that accounts receivable include invoices to CAP totaling $96,000.

[15] See Exhibit E attached hereto.

an explanation for the failure to include substantial expenses in its calculations.

This explanation is nothing more than an excuse for manipulating the numbers to the advantage of Mr. Reynoso in support of his proposed reorganization plan. There are two Certified Public Accountants who have signed the Reports; i.e. Mr. Ulrich and Mr. Riley. These gentlemen know perfectly well that a "cash basis accounting" is not acceptable by any standards in representing the financial affairs of the Debtor and they know that use of such a system is not countenanced by the American Institute of Certified Public Accountants. Furthermore, they well know that use of "cash basis accounting" for some items and accrual accounting for others is not appropriate under any circumstances and such a "hybrid" system is subject to gross misstatement and manipulation. One can only speculate why these professionals would participate in presenting this Court with Reports so fundamentally flawed.

Bankruptcy Rule 9009 mandates the use of the Official Form, and the Debtor used the Official Form For Business And Industry Monthly Operating Report to report to this Court and the United States Trustee. On the portion of the form entitled "Income Statement" the form parenthetically states "Accrual Basis". The Form further states: "Debtor's own form may

be substituted if (1) it is prepared in accordance with generally accepted accounting principals..." Here the Debtor states in each Report: "Please See Attached Internally Generated Computer Statements" thereby substituting Debtor's own form. There can be absolutely no question that the "Internally Generated Computer Statements" must be prepared in accordance with Generally Accepted Accounting Principals as defined by the AICPA. The Debtor's admitted use of "cash basis accounting" is completely contrary to the letter and intent of the provisions governing Business And Industry Monthly Operating Reports which the Trustee is mandated by law to provide.

Mr. Richardson defends the use of a "cash basis of accounting" in his response to Exhibit B after Kummer pointed out that such a system of accounting, if it can be called a system at all, leads to very substantial overstatement of Profits From Operations. Mr. Dake, in response to Kummer bringing these matters to his attention, essentially responded that Kummer should stop asking questions.[16] Mr. Dake, Mr. Richardson, Mr. Ulrich, and Mr. Riley know better, and it is clear they have adopted a course of action intended to mislead the creditors to benefit Mr. Reynoso and they do not intend to do anything otherwise.

---

[16] See Exhibits B and C.

4.  <u>The Source Of Sales And Cost Of Sales Is Necessary To Assess The Feasibility Of The Debtor's Proposed Reorganization Plan And The Adequacy Of The Proposed Disclosure Statement.</u> In projecting future profitability it is important to know the nature of the business going forward and the Cost Of Sales required to produce the projected revenues. Different types of business require different Cost of Sales. Projections of Gross Profit require projection of future Sales and application of a Cost of Sales percentage determined by historic Cost of Sales necessary to produce the projected revenues. Cost of Sales is a variable cost which can only be appropriately projected once the type of Sales being projected are known and the historic Cost of Sales for such business is determined.

The business of the Debtor has historically experienced Cost of Sales of approximately 65% of gross Sales. However, the Reports indicate that the Cost of Sales for the work being performed for CAP exceeds 72% to Subcontractors alone, without regard to internal costs which are difficult to separate based on the Reports from Cost of Sales associated with work for other customers.

Although the Debtor's proposed plan of reorganization calls for payments to the Estate over a six year period of a substantial portion of the proposed purchase price for all of the assets of the Estate by Mr. Reynoso,

there are no projections of future sales or earnings. The proposed disclosure statement instead references Mr. Reynoso's "proven track record" without any analysis of the history of the Debtor under Mr. Reynoso's management. Instead of analysis, the proposed disclosure statement simply references the Income Statement attached, which as stated elsewhere herein grossly overstates the Net Operating Profit of the Debtor for the period January 1 through September 30, 2007.

In order to evaluate the Debtor's proposed disclosure statement the Debtor must disclose its actual costs and the nature of its Sales as well as provide a projection of future Sales and Cost of Sales which are based on actual historical relationships of Sales to Cost of Sales and not on numbers derived from accruing Sales while disregarding costs using some "cash basis of accounting".

5. <u>The Balance Sheets Attached To The Reports Since The Appointment Of The Trustee Substantially Understate The Liabilities Of The Debtor.</u> Kummer has brought to the attention of the Trustee and the Debtor the fact that substantial liabilities of the Debtor are not reflected on the Balance Sheets included with the Reports. The Comparative Balance Sheet included in the Report for September, 2007 reflects Post-Petition Liabilities of $609,593.78 although the actual Post-Petition Liabilities based

on the information presented by the Trustee in connection with Kummer's proposed Reorganization Plan exceed $975,000. It is extremely important that the Debtor and the Trustee amend the Reports to reflect the actual Post-Petition Liabilities since most of them will necessarily be paid in cash at the effective date of any plan of reorganization and the understatement of these liabilities is misleading.[17] Only the Trustee and the Debtor know what the real Post-Petition liabilities are, but it is clear they consistently exceed what is reflected in the Balance Sheets contained in the Reports.

With respect to Pre-Petition Liabilities a review of the Claims Register reveals claims to which no objection has been made totaling $2,417,360.41 while the Balance Sheets filed by the Trustee and the Debtor report these liabilities as only $1,371,724.30. Only the Trustee and the Debtor can clarify the actual Pre-Petition Liabilities.

It is important that the Reports accurately reflect the liabilities of the Debtor because the Equity is consistently overstated and the creditors cannot gauge the condition of the Debtor in order to assess any proposed

---

[17] Attached as Exhibit F is a schedule showing the actual Post-Petition Liabilities of the Debtor as of September 30, 2007 based on information provided at various times in communications with Kummer, statements before the Court, and an analysis of the information in the Reports themselves.

reorganization plan.[18] It is impossible to determine the adequacy of the Debtor's proposed disclosure statement without accurate information.

It is worthy of mention that the Debtor's proposed disclosure statement includes assets as part of the "Liquidation Analysis" which do not appear on the Balance Sheets submitted as part of the Reports. Particularly, there is an additional amount which is supposed to be due from CNA Insurance. Payments to the Trustee pursuant to the Debtors proposed reorganization plan are supposed to come from this source. When Kummer inquired about the likelihood of this claim being actually paid, the response of Mr. Richardson was nonsubstantive. It is impossible to determine the actual assets of the Debtor until the Debtor and the Trustee amend the Balance Sheets to accurately reflect the true assets and liabilities of the Debtor.

6.      The Time To Object To The Debtor's Proposed Disclosure Statement Must Be After The Filing Of Accurate Business And Industry Monthly Operating Reports. Under the circumstances no party in interest can determine whether the Debtor's proposed disclosure statement is

---

[18] Of course, by reflecting more Equity than there actually is Mr. Reynoso's history of operating the Debtor is not so apparent and his position as a shareholder is given more credence to creditors. In fact, when the Petition was filed there was shareholder equity of approximately $740,000. As of September 30, 2007, if the actual liabilities of the Debtor are taken into account, the shareholder equity is no greater than a negative $2 Million although the Comparative Balance Sheet included in the September Report reflects shareholder equity as a negative $332,000. Thus, shareholder equity is overstated in the Reports because the liabilities of the Debtor are understated in the Reports.

16
Case 2:05-bk-10489-GBN   Doc 489   Filed 11/20/07   Entered 11/21/07 11:30:18   Desc
Main Document    Page 16 of 19

adequate, what the actual condition of the Debtor now is, and whether the Debtor's plan of reorganization is feasible or in the best interest of the creditors. Kummer cannot revise his proposed reorganization plan and disclosure statement in reliance on the Reports which he believes to be erroneous.

Until the Debtor and the Trustee file and certify Reports at least since June, 2007 which conform to Generally Accepted Accounting Principals the Court must extend the period to object to the Debtor's proposed disclosure statement in fairness to the parties in interest and defer consideration of the Debtor's plan of reorganization so that the feasibility and fairness to the creditors can be judged in light of accurate information.

Heretofore the Debtor and the Trustee have held information close to the vest and have resisted all attempts to pry information about the Debtor and the Estate from their sole control. Now the Court must allow the parties in interest to at least have a glimpse of what is really transpiring behind this wall of secrecy.

The Court should keep in mind in considering this Motion that it is the Debtor who, through counsel, has stated that the Income Statements are in part based on a "cash basis of accounting" and it is the Debtor, through counsel, who has defended this accounting practice and who insists that the

reports are correct and do not misstate expenses.[19] Kummer does not bring these matters to the attention of the Court lightly, but Kummer has no choice based on Mr. Richardson's responses to Kummer's inquiries and the Trustee's support of the Debtor's position.

**WHEREFORE**, Kummer prays for the entry of an order directing the Trustee and the Debtor to file accurate Business And Industry Monthly Operating Reports for the months of June, July, August, September and October, 2007 prepared in accordance with Generally Accepted Accounting Principals and continue to do so for so long as the Estate remains open. Furthermore, Kummer prays for a continuance of the hearing scheduled for December 20, 2007 with respect to the Debtor's proposed disclosure statement until thirty (30) days after the filing with the Court and the United States Trustee of such Reports.

Dated: November 19, 2007

*/s/ Thomas L. Kummer*

Thomas L. Kummer, *pro se*

---

[19] See E-Mail to Kummer from Mr. Richardson dated November 18, 2007 attached as Exhibit G. Also, attached as Exhibit H is Kummer's October 22, 2007 request for information from the Debtor and the Trustee with hand written notes of Mr. Richardson This letter has been referenced by Mr. Dake several times in the hearings on November 8 and November 15. The responses are cursory at best. Particularly see responses to question 2 which indicates that Cost of Sales in the Reports do not include Subcontractor costs related to the CAP work of the Debtor. Of course, when funds were received and Subcontractors paid in October costs were still not included in Cost of Sales.

Copy mailed November 19, 2007 to:

**DALE ULRICH, CHAPTER 11 TRUSTEE**
C/O Terry A Dake, Ltd.
11811 North Tatum Boulevard
Suite 3031
Phoenix, Az. 85028-1621

**WILLIAM R. RICHARDSON**
Richardson & Richardson, P.C.
1745 South Alma School Road
Corporate Center, Suite 100
Mesa, Arizona 85210-3010

*/s/ Thomas L Kummer*
_____
Thomas L. Kummer, *pro se*