# Exhibit A

**To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement**

Thomas L. Kummer
2164 Siesta Avenue
Las Vegas, Nevada 89169
717-650-7164
reno4829@aol.com

November 16, 2007

Mr. Dale Ulrich
Trustee
Via e-mail

Mr. Terry A. Dake
Attorney For The Trustee
Terry A. Dake, LTD.
11811 North Tatum Boulevard
Suite 3031
Phoenix, Arizona 85028-1621
Via mail and e-mail

Mr. William R. Richardson
Attorney For The Debtor
Richardson & Richardson
1745 South Alma School Road
Corporate Center, Suite 100
Mesa, Arizona 85210-3010
Via mail

> Re: AR Utilities Specialists, Inc.
> Case No. 2:05-10489-PHX-GBN

Gentlemen:

I have received and briefly reviewed the Reports for September and October, 2007 and the Purchase and Sale Agreement entered on November 5, 2007 between Mr. Ulrich as Trustee and Mr. Alejandro Reynoso. Would you be so kind as to provide the following with respect to these documents so I can begin a more complete analysis.

cc: [illegible]

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
November 16, 2007
Page Two

---

### Purchase And Sale Agreement

I am trying to fully understand the proposed Reorganization Plan of the Debtor which appears to be based principally on the Purchase And Sale Agreement dated November 5, 2007 attached thereto. As I understand the Purchase and Sale Agreement, the purchase price is to be paid as follows:

> $100,000 in cash from the existing cash of the Debtor.
> $960,000 payable in installments over six years.
> $200,000 of any insurance proceeds from CNA Insurance.
> Release of any administrative claim from the Debtor's current landlord.

*[handwritten: plan terms. Pls read plan terms. no]*

Is there any other consideration for the proposed sale of the assets of the Debtor contemplated? If not, how does the proposed sale provide for payment of administrative claims in cash at the effective date of the Plan of Reorganization based on this Purchase and Sale Agreement? As Mr. Dake has previously indicated to me, the amount of cash necessary to satisfy the administrative claimants and potential administrative claimants exceeds $900,000, excluding any obligations under the current lease for the space occupied by the Debtor.

Also, in the proposed Reorganization Plan it is suggested that there is a pending "Insurance Claim Receivable" of an estimated value of $432,000. This does not appear anywhere on the Reports of the Debtor. Please provide information about this claim, including whether the claim has been

*[handwritten: ① Business interruption and ② Property damage from Oct 2006 flood.]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
November 16, 2007
Page Three

---

*[handwritten: in prog. (yr). / soon we hope.]*

submitted to CNA Insurance, whether the claim has been approved by CNA Insurance, and when such claim is expected to be paid.

I note that in the Liquidation Analysis included in the Debtor's proposed Disclosure Statement there is also a "CNA Flood items to be reimbursed" asset of $1,700. What is this item, as it does not appear on any of the Reports of the Debtor? There is also an "Employee Advance" item of $2,000 from Mr. Uribe. Did not the settlement with Mr. Uribe approved recently by the Court resolve all such claims against him? *[handwritten: questionably, as it was not the subject of the complaint.]*

*[handwritten margin note: ① shares recently discovered in prev. files. ② value is estimated as company has been sold several times]*

There is in addition an asset listed in the Liquidation Analysis in the Debtor's proposed Disclosure Statement entitled "Niaski/Caribou Securities (4,900 shares)". This asset is not listed on the Reports of the Debtor. What is this item and how was the value derived?

### September and October Reports

The September Report, unlike all the others, does not include a General Operating Account Check Register. Please provide this document at your earliest convenience. *[handwritten: To come]*

The August, September, and October Reports reflect Sales from CAP. However, there is reference in various notes to amounts owed to Subcontractors, yet I cannot find any indication that these costs have been

*[handwritten: I understand that these are offsets to accts rec. entries and will be applied to costs of sales when receivables are paid & when subs are paid.]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
November 16, 2007
Page Four

---

*[handwritten: Cash basis's acct'ng]*

included as Cost of Sales in the Income Statement. I note that in October the Subcontractors listed in the August and September Reports received payments totaling approximately $148,000. There is also an indication in the October Report that an additional $96,000 of Subcontractor cost was accrued but it does not appear this cost is included as an expense in the Income Statement. Please explain why these costs have not been included in the Income Statement as expenses. It appears to me from a rough calculation that Gross Profit for August, September, and October have been overstated in the Income Statements by about $244,000. This is an important variance, of course, and if I am *[circled: wrong]* please simply provide me with an explanation of how these costs have been taken into account in the Income Statement. *[handwritten: see reports.]*

In the August and September Reports the amounts due to Subcontractors are included as "Notes" in the Subsidiary Trade Accounts Payable Ledger Analysis so the amounts due to each Subcontractor can be identified. It appears that these Notes are no longer included in the Accounts Payable on the Balance Sheet and are, therefore, no longer reflected on the Subsidiary Trade Accounts Payable Ledger Analysis. Instead, they are included according to Note 4 to the Balance Sheet in Accrued Liabilities. Please provide the amounts for each creditor included in the item "Accrued Liabilities" as of October 31, 2007. *[handwritten: to come.]*

Thank you for your consideration.

Sincerely,

*[signature: Thomas L Kummer]*

Thomas L. Kummer

# Exhibit B

## To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement

Thomas L. Kummer
2164 Siesta Avenue
Las Vegas, Nevada 89169
717-650-7164
reno4829@aol.com

November 16, 2007

11/16/07 Mr. Kummer,
see comments)
—Bill Richard

Mr. Dale Ulrich
Trustee
Via e-mail

Mr. Terry A. Dake
Attorney For The Trustee
Terry A. Dake, LTD.
11811 North Tatum Boulevard
Suite 3031
Phoenix, Arizona 85028-1621
Via mail and e-mail

Mr. William R. Richardson
Attorney For The Debtor
Richardson & Richardson
1745 South Alma School Road
Corporate Center, Suite 100
Mesa, Arizona 85210-3010
Via mail

Re: AR Utilities Specialists, Inc.
Case No. 2:05-10489-PHX-GBN

Gentlemen:

I am in receipt of Mr. Richardson's response to my inquiries, a copy of which is attached. I just do not understand how the proposed Debtor's Plan Of Reorganization provides for payment in cash at closing of all administrative claims based on the payment of only $100,000 in cash at closing of the sale transaction with Mr. Reynoso. Upon consummation of

Case 2:05-bk-10489-GBN    Doc 489-1    Filed 11/20/07    Entered 11/21/07 11:30:18
Desc Exhibit    Page 7 of 13

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
November 16, 2007
Page Two

———————————

the sale transaction the Estate will have no other assets but those from the sale. I have read the Plan terms as Mr. Richardson suggests, and it does state the administrative claims will be paid. However, where is the money coming from to make such payment? Please enlighten me.

 Now to a more serious matter. I have questioned why expenses associated with performing work for the Central Arizona Project are not included in the Income Statements. Mr. Richardson confirms this is true, but according to Mr. Richardson, the Debtor has chosen to use "cash basis accounting" in reporting costs incurred in performing services for Central Arizona Project. Under this "cash basis accounting" Mr. Richardson suggests that these costs will be "applied to costs of sales when receivables are paid and when subs are paid". Such treatment presents a very serious issue because not only do the Reports filed with the Court show operating income when there has actually been an operating loss for the period June through October, 2007, but the Debtor's proposed Disclosure Statement relies heavily upon the premise that the Debtor is and has been profitably operated by Mr. Reynoso.

 It is axiomatic that the Reports filed with the U.S. Trustee and the Court are to conform to Generally Accepted Accounting Principals. A "cash basis of accounting" is not acceptable in this context.

 Mr. Richardson states that the costs will be reflected as expenses when the receivables from Central Arizona Project have been collected and the Subcontractors paid. Yet, that very thing occurred in October and the October Report does not reflect these expenses. A total of $146,168.62 was paid to the Subcontractors in October out of a total received from Central

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
November 16, 2007
Page Three

---

Arizona Project of $201,725.94. None of these costs has been included in the Income Statement for August, September or October as an expense although all of the invoices to Central Arizona Project have been included in Sales on the Reports. There is another $96,000 of expense incurred in October which is not included in the Income Statement for October. *not true*

This is particularly important because attached to the Debtor's proposed Disclosure Statement is the Income Statement for September which dramatically overstates Operating Income not only for that month but for the year to date. The exclusion of these expenses from the Income Statement is in my mind very troubling.

If the expenses incurred to Subcontractors are taken into account along with the amounts claimed by you gentlemen as administrative costs, none of which have been included as expenses, the operating profit is effected in the extreme. While the Income Statements filed with the Court and the U.S. Trustee and upon which the Debtor's proposed Disclosure Statement is based reflects Net Operating Profit of $199,067.29 for the months of June, July, August, September and October there was actually a Net Operating Loss of over $159,000. This is a discrepancy of some $358,000 in the five month period. *wrong*

Case 2:05-bk-10489-GBN    Doc 489-1    Filed 11/20/07    Entered 11/21/07 11:30:18
Desc Exhibit    Page 9 of 13

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
November 16, 2007
Page Four

---

*[handwritten annotations: "glaringly incorrect", "reports are fine."]*

    I think it is very important that this matter be addressed immediately by revision of the Reports for the months of August, September and October and that the statements that the Debtor is operating profitably in the Debtor's proposed Disclosure Statement be revised to reflect the true condition of the Debtor and its operations. The Debtor's proposed Disclosure Statement cannot be considered adequate within the meaning of the Bankruptcy Code when it is based upon operating income numbers which are clearly erroneous. Equally important, the Reports to the Court and the United States Trustee are signed under penalty of perjury and exclusion of such substantial expenses in calculating operating income must be considered a serious matter in light of the certifications of accuracy by all who have signed the Reports.

    Thank you for your consideration.

Sincerely,

*[signature]*

Thomas L. Kummer

# Exhibit C

**To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement**

**From:** reno4829@aol.com
**To:** tdake@cox.net
**Subject:** Re: AR Utilities Specialists, Inc.
**Date:** Sat, 17 Nov 2007 4:51 pm

Mr. Dake:

I am very sorry that you feel I am intentionally driving up the costs to the Estate. My interest is to present a confirmable reorganization plan, and it makes no sense for me to intentionally increase the administrative costs which must be paid in cash at the effective date. Most of the costs you have incurred arise from the Trustee's attempt to keep me from obtaining information or proposing a reorganization plan. You may be right that a point may come at which the Trustee incurs so much expense obstructing my efforts that no one can propose a plan because the cash will not be available to pay the administrative claims at the effective date. Then the only alternative will be conversion and liquidation. That would truly be a shame.

I wrote you yesterday because if I had a client who was a Certified Public Accountant I would want to know that he had certified under penalties of perjury Reports to the United States Bankruptcy Court that are clearly erroneous and do not comport to Generally Accepted Accounting Principals. In this situation I thought it would be of even more interest since your client has entered into a Purchase and Sale Agreement with Mr. Reynoso who has presented a proposed disclosure statement based on these erroneous numbers. I thought perhaps you would advise your client to investigate the situation and make amendments as appropriate. Instead, you seem to find it offensive that I would bring this matter to your attention. For that I am truly sorry.

Mr. Richardson in two communications yesterday confirmed that the expenses incurred by the Debtor have not been included in the income statements. The result is a "hybrid" system of accounting which includes income in Sales but excludes expenses thus inflating profits. I know, as a Certified Public Accountant, your client cannot possibly ascribe to such a system of accounting, and I believe both you and the Trustee have an ethical obligation to bring this matter to the attention of the Court and rectify it. If you do not agree with that assessment, at least I tried to give you an opportunity to do so on the assumption that Mr. Ulrich was not aware of the situation. If he was aware and signed the Reports anyway, then your reaction to my inquiries takes on a whole different tenor.

I will not seek information informally from you again. It is apparent that this needless process of having to seek orders from the Court at every turn must continue. I do not want this situation because in the final analysis I will have to end up paying cash for all administrative expenses at the effective date of my plan and I know you and the Trustee will not agree to any other arrangement.

-----Original Message-----
From: Terry Dake <tdake@cox.net>
To: reno4829@aol.com
Cc: Dale Ulrich <ddu@idhost.com>; Bill Richardson <wrichlaw@aol.com>; Alex Reynoso <Alex.Reynoso@arusi.net>
Sent: Fri, 16 Nov 2007 7:47 pm
Subject: Re: AR Utilities Specialists, Inc.

Tom, here is the problem. No matter how much information you get, no matter how quickly it is provided, you will not be satisfied. The bottom line is that none of this is about information. It is about your desire to force this debtor to spend as much time, as much money, and as much of its resources as possible, responding to an endless stream of questions about irrelevant and inconsequential accounting details.

Take today for example. Bill Richardson took time out of his day to respond to your e-mailed letter from this morning. And what did it accomplish? It resulted in you writing a second letter to Bill and I wherein you now raise more questions, more issues, and more concerns, and now you want the estate to spend time and money going back to amend the monthly financial reports from June through October. I'm sure that will generate a lot of revenue with which to pay creditors.

It is obvious that you do not have in mind the best interests of the creditors and the bankruptcy estate. Instead, perched on your $10,000 administrative expense claim, you want to take pot shots and see what kind of damage you can inflict.

Anyone who has dealt with Mr. Ulrich and I before know that we are very open and very easy to deal with when it comes to information. But, when it is apparent, as it is here, that requests for information are nothing more than a subterfuge to sabotage the bankruptcy estate, then there is no point in responding to the endless barrage of questions that you seem to have too much time on your hands to formulate.

That being said, if you want to sit down with Dale and Mark Riley, and ask them some legitimate questions, I have no doubt that Judge Nielsen will let you do so, and we will certainly accomodate that process. But, we will not engage in a daily game of "Tom's got more questions." We haven't the time or the patience to do so, and we will not allow you to destroy this business with these kinds of tactics.

So, we will look forward to seeing you in Phoenix.

> ----- Original Message -----
> From: reno4829@aol.com
> To: tdake@cox.net
> Sent: Friday, November 16, 2007 9:02 AM
> Subject: AR Utilities Specialists, Inc.
>
> Mr. Dake:
>
>    Please find attached a letter seeking basic information about the Reports and the Purchase and Sale Agreement between the Trustee and Mr. Reynoso. I would appreciate your respone as soon as possible.
>
>    Also, attached are documents sent yesterday to the Clerk for filing seeking 2004 Examinations. I continue to find it incredible that we must go through a formal examination process instead of simply sitting down and getting the issues resolved or at least understood. Nevertheless, it appears such a meeting is not acceptable to the Trustee so we must proceed accordingly. You will be receiving these documents by mail. Thank you.
>
> Email and AIM finally together. You've gotta check out free AOL Mail!