# Exhibit D

## To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement

## Analysis of CAP Contract Revenues Included In Sales In The Income Statements Filed By The Debtor And The Trustee For The Months Of August, September, and October, 2007

Although it does not appear that the Debtor and the Trustee contend otherwise, the following analysis supports the proposition that the amount of Sales included in the Income Statements of the Debtor for the months of August, September, and October 2007 include Sales attributable to Central Arizona Project.

|  | August | September | October |
|---|---|---|---|
| Receivables From CAP Beginning Of Month | $ 0[1] | $100,166.92 | $146,167.62 |
| Receivables From CAP End Of Month | $100,166.92[2] | $146,167.62[3] | $ 96,000[4] |
| Payments From CAP[5] | $ 0 | $ 0 | $201,725.94 |
| Estimated Sales Attributable To CAP | $100,166.92 | $ 46,000.70 | $151,558.32 |
| Estimated Sales Attributable To Other Customers | $ 96,230.24 | $128,575.41 | $158,587.83 |

This calculation is based on the changes in accounts receivable from CAP stated in the Reports and an analysis of the deposits to the Debtor's

---

[1] Note To "Status of Assets" included in August Report and comparison of "Status of Assets" included with July Report.
[2] Note To "Status of Assets" included in August Report.
[3] Note To "Status of Assets" included in September Report.
[4] Note To "Status of Assets" included in October Report.
[5] Payments from CAP are reflected in the Check Registers included in the Reports for August and October. No Check Register for the Operating Account of the Debtor was included in the September Report, but an analysis of the accounts receivable confirms that no payments were received from CAP in September.

2

Operating Bank Account also included in the Reports.[6] From the receivables from CAP at the end of the month are deducted from the receivables from CAP at the beginning of the month to determine the accounts receivable change during the month. Then cash payments are added to determine the amount which was accrued as Sales during the month. The total over the three month period is $297,725.94 which, when reduced by the $96,000 remaining unpaid as of October 31, 2007, corresponds exactly to the $201,725.94 deposited by the Debtor from CAP in October, 2007.

By deducting from the total Sales reported on the Income Statements for August, September and October the Sales attributable to CAP, Sales attributable to other customers can be gauged. The monthly average during the month is $127,797.83, which is consistent with the $123,987 average Sales to customers other than CAP from January, 2007 through July, 2007 as reflected on the Reports.

Of course, only the Debtor has the actual underlying data upon which a conclusive analysis could be based, and the Debtor is not about to share that data with Kummer. Nevertheless, the above analysis shows conclusively that the Sales reflected in the Income Statements included in the Reports for August, September, and October include amounts invoiced to CAP during those months.

---

[6] Interestingly enough, the Debtor did not provide for September.2007 the General Operating Account Check Register which has been provided with every other Report. The Income Statement for September, 2007 happens to be the one attached to the Debtor's proposed disclosure statement.

# Exhibit E

## To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement

Exhibit E To Kummer's Motion To Require Trustee
And Debtor To File Reports In Accordance With
Gnerally Accepted Accounting Principals And To
Postpone Consideration Of Proposed Disclosure Statement

| Calculation Of Actual Profit From Operations | June | July | August | September | October | Total |
|---|---|---|---|---|---|---|
| Reported Profit From Operations | (57,814.22) | 81,442.73 | 4,055.63 | 18,331.07 | 153,052.08 | 199,067.29 |
| Expenses Incurred To CAP Subcontractors | | | (94,410.27) | (54,083.35) | (96,000.00) | (244,493.62) |
| Administrative Expense Claims Unreported (Approximate) | | | | | | (113,903.44) |
| Actual Profit From Operations | (57,814.22) | 81,442.73 | (90,354.64) | (35,752.28) | 57,052.08 | (159,329.77) |

| | August | September | October Payments | October Additional Unaccrued Expense |
|---|---|---|---|---|
| Analysis Of Unaccrued Subcontractor Cost | | | | |
| ADM Group | 5,500.00 | 14,325.00 | (14,325.00) | |
| Anderson Engineering | 42,035.95 | 38,506.00 | (38,506.00) | |
| Cobra Electric | 14,789.40 | 39,940.00 | (37,615.00) | |
| Detek | 6,375.00 | 25,653.00 | (25,653.00) | |
| Juniper-Earth | 19,209.92 | 18,319.62 | (18,319.62) | |
| Pearson Engineering | 6,500.00 | 11,750.00 | (11,750.00) | |
| Totals | 94,410.27 | 148,493.62 | (146,168.62) | 96,000.00 |

Exhibit E

## Notes To Exhibit E

Exhibit E contains a "Calculation Of Actual Profit From Operations" and an "Analysis Of Unaccrued Subcontractor Costs. The following notes are applicable.

1. The Reported Profit From Operations is taken from the Reports filed for each of the respective months.

2. The Expenses Incurred To CAP Subcontractors is determined from the Notes included in the "Status Of Liabilities And Sensitive Payments" included in the Reports for the respective months.

3. The payments to each of the Subcontractors is determined from the "General Operating Account Check Register" provided with the August and October Reports. Unfortunately, the "General Operating Account Check Register" is missing from the September Report, but it is apparent no payments were made to the Subcontractors in September because of the payments made in October.

4. Since the Debtor removed the amounts owed to the Subcontractors from the "Subsidiary Trade Accounts Payable Ledger Analysis" in October the exact amounts owed to each Subcontractor cannot be reflected. However, Note 2 to the "Status Of Liabilities And

Sensitive Payments included in the October Report states that accounts payable to these Subcontractors totals $96,000.

5. The Income Statements for August, September, and October reflect "Subcontractors" in "Cost Of Sales" in the amounts of $12,984, $17,720 and $2,205, respectively. These amounts do not correspond with any of the Subcontractor costs associated with CAP and are believed to relate to work for other customers. The reported Subcontractor costs are consistent with accruals in prior months before CAP costs began.

# Exhibit F

## To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement

Exhibit F To Kummer's Motion To Require Trustee
And Debtor To File Reports In Accordance With
Gnerally Accepted Accounting Principals And To
Postpone Consideration Of Proposed Disclosure Statement

## Postpetition Liability Analysis:

| | Reported Balance Sheet 9/30/2007 | Actual 9/30/2007 |
|---|---|---|
| Super-Priority and Secured Claims (Merchants Bonding) | $ - | $ 66,903.00 |
| Federal Taxes Payable | $ 48,383.21 | $ 78,752.37 |
| Maricopa County | $ - | $ 31,265.00 |
| Accounts Payable | | |
|    Notes Payable | $ 148,493.62 | $ 148,493.62 |
|    Trade Accounts Payable | $ 49,234.66 | $ 49,234.66 |
|    Alejandro Reynoso | $ 18,014.02 | $ 18,014.02 |
|    Thomas Kummer | $ 10,867.00 | $ 10,867.00 |
| Leasehold | | |
| Notes Payable | $ 18,514.62 | $ 18,514.62 |
| Professional Fees | | |
|    Lewis and Roca | $ 274,482.34 | $ 395,984.97 |
|    Forrester and Worth | $ - | $ 2,145.00 |
|    Richardson | | $ 50,940.00 |
|    Ulrich | | $ 35,000.00 |
|    Dake | | $ 27,963.44 |
| Accrued Liabilities | $ 41,604.31 | $ 41,604.31 |
| Secured Debt | | |
| Other | | |
| **Total Post-Petition Liabilities** | **$ 809,593.78** | **$ 975,682.01** |

Case 2:05-bk-10489-GBN    Doc 489-2    Filed 11/20/07    Entered 11/21/07 11:30:18
                          Desc Exhibit    Page 9 of 12

# Exhibit G

## To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement

From: reno4829@aol.com
To: Wrichlaw@aol.com
Cc: tdake@cox.net
Subject: Re: ARUSI
Date: Sun, 18 Nov 2007 10:15 pm

Mr. Richardson:

I am in receipt of your e-mail of November 18, 2007. I have tried to act in a completely professional manner in posing questions about the operations of the Debtor and the condition of the Estate. As you know, I have been determined to be a party in interest and the Bankruptcy Code gives me the right to accurate information. The fact that you and the Trustee have decided it is a better use of your time to resist providing me with meaningful information instead of simply answering my questions is your decision, not mine.

I intend to purchase the assets of the Estate. I am entitled to propose a reorganization plan just like any party in interest. The rights of a party in interest do not depend upon the size of the claim. Your client, Mr. Reynoso, has no investment in the Debtor at this time. The creditors are of utmost importance, and getting the best reorganization plan for them is the purpose of the proceedings now. You seem to believe that the only person entitled to propose a plan of reorganization is Mr. Reynoso, and with this view everything I or anyone else does is an attempt to "obstruct the reorganization process". That view is not supported by the Bankruptcy Code. The cases are legion where a party in interest other than the Debtor has proposed a successful reorganization plan. I have cited some of these cases in my filings with the Court and I commend them to your consideration.

There is contempt only on your side of this matter, not mine. This is strictly business from my perspective. I would really like to know, however, how Mr. Reynoso's proposed plan of reorganization provides for payment of all administrative claims in cash at the effective date. Your suggestion that I employ a bankruptcy attorney who can explain it to me is not helpful. No attorney, accountant, or frankly anyone alive can explain how the administrative claims will be paid when at closing of the contemplated purchase the Trustee will have only $100,000 in cash to pay at least $600,000 of Post-Petition Liabilities as reflected in the Balance Sheet for November 30.

To attribute "malicious designs" to me is unfortunate. I do not intend to engage in further exchange of unproductive e-mails with you and the Trustee. My interest is nothing more than to purchase the assets of the Estate as quickly as possible by presenting a confirmable plan of reorganization and an adequate disclosure statement. I will refrain from making observations about the adequacy of the disclosure statement you have presented on behalf of Mr. Reynoso until such time as I obtain the necessary information to consider the adequacy issue.

-----Original Message-----
From: Wrichlaw@aol.com
To: RENO4829@aol.com
Cc: tdake@cox.net; Alex.Reynoso@arusi.net
Sent: Sun, 18 Nov 2007 3:12 am
Subject: ARUSI

Mr. Kummer,

Your email to Mr. Dake misrepresents the facts. I will send (or have sent) to him what I sent to you and he can make his own determination without having what I said filtered (incorrectly) through you.

I believe that the reports are correct and do not misstate expenses.

My sentiments are fully in accord with those expressed by Mr. Dake. With a claim as small as yours, the only conclusion that any rational person can draw is that you are attempting to obstruct the reorganization process in this case. The benevolence runs shallow and the contempt far too deep as is evidenced your conduct in the past. The only thing that would be a shame in this case is if you were to succeed in your obvious malicious designs.

Bill Richardson
Attorney for the Debtor

---

See what's new at AOL.com and Make AOL Your Homepage.

---

Email and AIM finally together. You've gotta check out free AOL Mail!