# Exhibit H

## To Kummer's Motion To Require Trustee And Debtor To File Reports In Accordance With Generally Accepted Accounting Principals And To Postpone Consideration Of Proposed Disclosure Statement



Thomas L. Kummer
2164 Siesta Avenue
Las Vegas, Nevada 89169
717-650-7164
reno4829@aol.com

October 22, 2007

*[handwritten: 11/16/07 Mr. Kummer, Please see response & comments infra. Bill Richardson]*

Mr. Dale Ulrich
Trustee
Via e-mail

Mr. Terry A. Dake
Attorney For The Trustee
Terry A. Dake, LTD.
11811 North Tatum Boulevard
Suite 3031
Phoenix, Arizona 85028-1621
Via mail and e-mail

Mr. William R. Richardson
Attorney For The Debtor
Richardson & Richardson
1745 South Alma School Road
Corporate Center, Suite 100
Mesa, Arizona 85210-3010
Via mail

    Re:  AR Utilities Specialists, Inc.
         Case No. 2:05-10489-PHX-GBN

Gentlemen:

    In the hearing on October 5, 2007 and in a series of objections to my proposed disclosure statement I was criticized for seeking information about the Debtor and the Estate from Mr. Ulrich, the Trustee, and Mr. Dake, the attorney for the Trustee, and not Mr. Richardson, the attorney for the Debtor out of possession. It was suggested that I have driven up the costs to the Estate but at the same time I was criticized for not conducting Rule 2004 examinations to obtain information.

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Two

---

It seems quite clear to me that Bankruptcy Code Section 521 requires the Debtor out of possession to turn over all documents, records, and information concerning the Debtor to the Trustee so that the counsel for the Debtor should not have any knowledge or information which the Trustee does not possess. On this basis, I have heretofore directed my inquiries only to the Trustee. In order to avoid any further criticism or confusion, however, I am now directing this request to both the Trustee and counsel for the Debtor.

The insistence that I must conduct 2004 examinations to obtain information seems inconsistent with Bankruptcy Code Section 704(7). One of the statutory obligations of the Trustee is to "furnish such information concerning the Estate and the Estate's administration as requested by a party in interest". I have considered conducting 2004 examinations, but I have not done so in the preparation of my proposed disclosure statement for the very reason that it seems so wasteful of everyone's time and resources to set aside a week or so to take sworn statements from the Trustee, Mr. Reynoso, the employees, and others just to get information which should be readily available from the Trustee. I have no interest in incurring costs to the Estate that are unnecessary.

It is beneficial to all concerned that the disclosure statement be as complete and accurate as possible. It is therefore my intent in propounding questions to provide the most complete information possible in the disclosure statement.

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Three

---

The following is a list of information I request:

### Reports

I have reviewed the Reports submitted to the Court and the U.S. Trustee with respect to operations of the Estate. I have the following requests for information concerning the Reports:

1. **Property, Plant and Equipment.** In the notes to the June, 2007 Report it is indicated that assets were reclassified and the basis adjustments were made. Assets have also been sold by the Trustee. Please provide a list of all assets which make up the asset class "Property, Plant and Equipment" on the balance sheet for September 30, 2007, their acquisition cost and date, the depreciation recognized with respect to each such asset, and the net book value of each asset item. Also, please identify all assets which are leasehold improvements.

2. **Accounts Receivable.** Please provide a list of all accounts receivable as of September 30, 2007. In the notes to the September, 2007 Report it is indicated that accounts receivable include $148,187.82 due from CAP which will be used to pay ARUSI subcontractors. Has this amount been included in the Sales reported for September or any other month? Have the amounts due to such subcontractors been included in Cost Of Sales in the income statement either for September, 2007 or prior months?

3. **Work In Process.** I note with interest that there is a statement by the Debtor in the filings of Mr. Richardson that the Tracker System is no longer used. I would like a definitive statement from the Trustee whether this is the case. Also, please provide the Tracker date for the end of September.

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Four

---

If the Tracker System is not used, please identify the procedure whereby employees working on projects for customers of the Debtor are keeping their time and the system whereby projects are being internally managed.

*[handwritten: why is this relevant to your Disclosure?]*
*[handwritten: see response earlier today - These are acctg entries only.]*

4. **Notes Receivable.** Please state from whom the assets listed as "Notes Receivable" are due, and provide copies of the promissory notes which are included in this asset category. Please also provide a list of all payments received from the makers of such Notes Receivable, and a list of all checks or other documents which reflect advances to the makers of such Notes Receivable.

5. **Other Assets.** There is indication in the September, 2007 Report that funds to pay the Maricopa County Treasurer have been included in the category of "Other Assets". Are these funds reflected in "Total Cash"? Also, there is no list attached to the Report of "Other Assets". Please provide the list which should have been attached to the Report.

*[handwritten: why relevant? These are proceeds of sale of property held by TEE.]*
*[handwritten: none]*

6. **Cash.** Attached to each of the Reports until the one for September, 2007 is a bank reconciliation reflecting the source of deposits shown on the bank statements. Please provide the information contained in the reconciliation for September, including the source of each deposit shown on the bank statement as well as a check register. Also indicate if the cash intended to be paid to Merchants Bonding Company according to the September Report are included in the asset "Total Cash" on the balance sheet.

*[handwritten: yes]*
*[handwritten: under separate cover]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Five

---

7. **Postpetition Liabilities.** I request a list of postpetition payables by claimant and the amount owed as of September 30, 2007. Please clarify when funds will be disbursed if payment is anticipated but not yet made. I note that in the Report for September, Lewis and Roca is listed in Accounts Payable but only to the extent of $274,482.34. Please include in the list provided the actual amounts which have either been approved by the Court, or claimed by professionals from the Estate, whether or not claims have been filed with the Court or approved by the Court. Furthermore, I note there are various "Notes" listed in the accounts payable. Please explain what consideration has been given for the Notes by the recipients, identify the obliges, and state when such Notes are due and the terms thereof.

*[handwritten margin notes: "see above answer re accting entries"; "see order / court order"; "why relevant?"; "subsequent wty/L"]*

8. **Prepetition Liabilities.** The liabilities are stated to be $1,371,724.03 on the September, 2007 Report. This is substantially less than the prepetition claims on record with the Court which total approximately $2.5 Million. Please provide a list of all prepetition liabilities and claims, and explain why some have been eliminated from the Reports. If the Trustee has objected to any of the prepetition claims or intends to do so please identify those claims which the Trustee believes are not valid and why. With respect to the prepetition claims of insiders, including Alejandro Reynoso, Cynthia Reynoso, Michael Reynoso, Chris Reynoso, Steafine Reynoso, Eduardo Alonzo and Ruben Hinojos please provide all information upon which the Trustee is relying in determining the validity of these claims.

*[handwritten margin notes: "see schedules"; "Claims asserted in case have no bearing on what is on books. To put claims on books we need substantiation which may not have been received. Thus, reports may differ from claims asserted."]*

9. **Income Statement.** The question of whether the amount related to accounts receivable from CAP is included in "Sales" has already been posed. Please provide a breakdown of the Sales figure showing from whom the amount shown has been accrued. Please also indicate all amounts for professional fees and any other items of expense which have been incurred but not accrued as expenses in the income statement included in the September, 2007 Report.

*[handwritten margin notes: "have no billings sent from professionals. Figures provided to you already re Dake & Richardson, Ulrich."]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Six

---

*(a)* *(e), see oct statement*

10. **Insurance.** Please indicate if a new insurance arrangement has been reached, the amount of premiums anticipated under any such new insurance arrangement, and whether and to what extent an amount will be required to be paid when the insurance is obtained for the coming year and whether financing of premiums is anticipated and the basis of such financing arrangement.

11. **Contracts.** In the objections to the proposed Reorganization Plan there is a statement that the Debtor now has $3 Million of contracts. Is this amount related in whole or in part to the CAP work being undertaken by the Debtor? If so, it appears the Cost of Sales percentage may be altered with respect to revenues from this contract. It appears that there will be substantial costs to subcontractors which are greater than usually experienced with respect to work for other customers. Please provide a list of the contracts which the Debtor is now performing or will be performing in the future, a copy of such contracts and the costs expected to be incurred in performance of such contracts to third parties or subcontractors.

*will not be provided*

### Adversary Proceedings

Several Adversary Proceedings were initiated in June, 2007. The one against Uribe and MCC Technologies has apparently been settled and the settlement is pending for Court approval. I have the following questions with respect to the other Adversary Proceedings.

1. **Adversary Proceedings Against The Reynoso Family.** Have the Adversary Proceedings against Mr. Reynoso and the Reynoso family members been served? If not, why has service not been completed and does the Trustee intend to serve these Adversary Proceedings?

*see above*

*dismissed as too costly to the estate.*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Seven

*[Handwritten annotation: All assets still held out the company. No refused by Reynoso.]*

*[Handwritten: true]*

2. **Golden Anvil Stock.** Mr. Reynoso has stated before the Bankruptcy Court and again the Debtor has protested that Mr. Reynoso holds all stock of Golden Anvil as an asset of the Estate. Mr. Reynoso asserts no ownership right to the Golden Anvil stock and Mr. Richardson's protestations of this are legion on the record. Why has Mr. Reynoso not turned over the stock to the Estate? Does the Trustee intend to take any action to cause Mr. Reynoso to turn over the property of the Estate he holds?

*[Handwritten: not I — just Trans of — no need]*

3. **Agreement With The Reynoso Family.** Has there been any agreement with members of the Reynoso family with respect to settlement of the claims of the Estate against them? If so, please provide details of such agreement.

*[Handwritten: dismissed w/o prejudice]*

### Sale To Mr. Reynoso

1. **Agreement With Mr. Reynoso.** Does the Trustee intend to sell the assets of the Estate in any way directly or indirectly to Mr. Reynoso? Have there been discussions with respect to such a sale or transfer of assets from the Estate by the Trustee or his attorneys and Mr. Reynoso or anyone representing Mr. Reynoso? If so, please provide all data relating to such discussions. Has there been any agreement relating to such discussions entered into by the Trustee? If so, please provide a copy of such agreement.

*[Handwritten: see agreement EXH to Disclosure; see disclosure by debtor; already provided]*

2. **Domestic Case.** The Minute Entry from the Maricopa County Superior Court indicates that Mr. Dake testified in the divorce proceedings between Mr. and Mrs. Reynoso. Please provide all data and information provided to the Superior Court by the Trustee or Mr. Dake, and summarize the testimony given by or on behalf of the Trustee in that case. Also, provide a copy of Exhibit 28 which is referenced in the Minute Entry in connection with the testimony of Mr. Dake.

*[Handwritten: not in estate's hands; get your own transcript]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Eight

## Objections To Disclosure Statement

Various objection were filed by the Debtor to the proposed disclosure statement. The Trustee joined in these objections. There were first filed Debtor's Objections To Proposing Creditor Thomas L. Kummer's Disclosure Statement (the "Initial Objections") followed by Debtor's Supplemental Objections To Proposing Creditor Thomas L. Kummer's Disclosure Statement (the "Supplemental Objections"). Attached to the Supplemental Objections were "Observations and Comments" which were incorporated therein. The following requests are directed at the basis for the objections set forth in both the Initial Objections and the Supplemental Objections so that, if necessary, the proposed disclosure statement can be modified to accurately reflect the facts about the Debtor:

1. **Decline In Business Activity.** The statements in subparagraph 3 beginning on page 14 of the proposed disclosure statement have been the subject of objection in the Initial Objections. Please provide each and every fact, document, analysis, or other information which supports the objection. Furthermore, provide all documents and information necessary to calculate work in house and work in process since the beginning of 2007, including data from the Tracker System and from any other source. If the Tracker System does not contain the information, please provide from other sources sufficient data to calculate the work in process and work in house from SRP, APS, Southwest Gas, and any other customers at the end of each month during 2007 through September. Please also provide all documents or information which would support the remaining statements relating to page 14 of the proposed disclosure statement in the Initial Objections.

[handwritten annotations: "see financial reports filed w/ court", "contract figures to be supplied separately", "self explanatory - see objection"]

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Nine

---

2. <u>Accounting For Proceeds From CNA Insurance.</u> Please provide a description of the accounting treatment of the insurance proceeds on the books and records of the Debtor, and the adjusting entries described in the Notes included in the June, 2007 Report. Particularly, specify the flow of insurance proceeds from one account to the other in the books and records of the Debtor, and how the expenditure of such proceeds was booked. *[handwritten: why relevant. Why this is burdensome & will not be responded]*

3. <u>Post-petition Lending.</u> Please state with particularity all loans which have been made by the Debtor postpetition and provide detail of all transactions which have affected the asset "Notes Receivable" since the Petition Date. *[handwritten: see explanation & home for notes. No known loans]*

4. <u>Leasehold Improvements.</u> Please provide a list of all leasehold improvements, the acquisition cost thereof, and a description of the entries whereby such leasehold improvements were recorded on the books and records of the Debtor. *[handwritten: already sent. No sig. value.]*

5. <u>CNA Claims.</u> Please provide a complete description of any contacts with CNA Insurance with respect to the insurance claims filed by the Debtor in connection with the flood, and any investigation undertaken by the Trustee with respect to the insurance proceeds, how they were procured, and the disbursement thereof by the Debtor. *[handwritten: too burdensome, see # 2 above. Figures already provided]*

6. <u>Failures Of MCC Technology.</u> In the "Observations and Comments" it is stated that MCC Technology failed in performing contractual obligations and that Edmundo Uribe through Kummer attempted to revise and refused to sign contract agreements. Please provide all documents which would support this contention, including any document which would explain why such allegations were not made in the Adversary Proceeding against MCC Technology and Uribe. *[handwritten: why relevant? Case dismissed w/ prejudice]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Ten

---

7. **Pages 7 & 8.** In the "Observations and Comments" it is stated that Kummer can have no basis for any knowledge regarding the subject matter addressed on pages 7 or 8 of the proposed disclosure statement. Please identify each and every item or statement on pages 7 or 8 which are contended to be incorrect or inaccurate and provide any and all documentation or evidence which supports such contention.

8. **Withdrawals of Reynosos.** With respect to page 11 of the proposed disclosure statement the "Observations and Comments" suggest that "the $258,000 that Reynoso contributed in the months of March and April 2005 offset significantly any withdrawals by the principals." Please provide all documents and other evidence which reflects the payment of such amounts by Reynoso to the Debtor, the accounting entries which reflected such payments, and state each and every fact including all supporting documents upon which the Debtor or the Trustee rely in asserting that any prepetition payments by shareholders to the Debtor were other than capital contributions.

9. **Uribe and MCC Technologies.** Please state each and every fact upon which the Debtor or the Trustee rely and provide any documentary information which would support the statement that "MCC Technologies and or Edmundo Uribe were factor in creating difficulties for the Debtor" found in the "Observations and Comments".

10. **Footnotes 14, 15, 16 and 17.** In the "Observations and Comments" objection is made to footnotes 14, 15, 16, and 17 in the proposed disclosure statement. Please state each and every fact upon which this objection is based, and provide all documentary or other evidence which would tend to show that such footnotes are factually incorrect.

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Eleven

---

    11.    <u>Footnote 18 and 19.</u> In the "Observations and Comments" it is stated that "ARUSI runs extremely high gross profit margins... and can be extremely profitable". Please state each and every fact upon which this contention is based, and provide all documents and information supporting or evidencing such facts.

    12.    <u>Footnote 21.</u> In the "Observations and Comments" with respect to footnote 21 in the proposed disclosure statement it is stated that the TrackerSystem is unreliable and implies that it is no longer being used. Please state when the Tracker System ceased to be used to track time of the Debtor's employees and internally manage projects, whether new projects are recorded in the Tracker System, and state each and every fact upon which the statement was based and provide any documents or other evidence which would support the statement.

    13.    <u>Page 15.</u> It is stated in the "Observations and Comments" that the ComputerEase system provides a true picture of the financial condition of the Debtor. Please state whether the income statements and balance sheets attached to the Reports to the U.S. Trustee and the Court are prepared from information contained in the ComputerEase system. If so, state why substantial prepetition claims are not included in the balance sheet liabilities section, and why accrual of professional costs are not reflected as expenses in the income statements. If the ComputerEase data is correct, please explain whether the information from the ComputerEase system has been altered in preparing the Reports, and if so by whom and why.

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Twelve

---

14. **Footnote 22.** It is stated in the "Observations and Comments" that footnote 22 to the proposed disclosure statement is incorrect since "much of the work is billed for hourly work and billed on a weekly basis there is really no significant effect in Work in Process". For the period January 1, 2007 through September 30, 2007 please provide monthly data reflecting the amount of projects or jobs obtained from each customer, the amount of such projects or jobs billed during each month, and the amount of work remaining on each project to be completed at the end of each month.

*[handwritten annotation: you are not going to further respond Mr. Reynoso Debtor to show reason]*

15. **New Business.** With respect to Item 3 on page 17 of the proposed disclosure statement it is stated in the "Observations and Comments" that "ARUSI has obtained new contracts exceeding $3 million." Please state any facts upon which this statement is based and provide any documents or other evidence which supports such statement which has not already been provided in response to previous questions.

16. **Amounts Due To Shareholders.** With respect to footnote 35 to the proposed disclosure statement it is indicated that there are amounts due to shareholders according to the Schedules submitted in the petition. Please identify all amounts due by the Debtor to shareholders and provide all documents which support such amounts. State each and every fact upon which the Trustee or the Debtor rely in classifying any prepetition payments by the shareholders to the Debtor as debt rather than equity contributions and provide all documentation and evidence which would tend to support the premise that to the extent shareholders made payments to the Debtor prepetition such amounts were other than contributions to capital.

*[handwritten annotation: Amounts owed to Alex Reynoso for pre petition contributions as you should well know as prior CFO.]*

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Thirteen

*[handwritten: See above comments p. 10 & ¶ Y]*

17. <u>Promissory Note Of Alejandro And Cynthia Reynoso.</u> There is implicit in some of the "Observations and Comments" as well as the pleading in the Adversary Proceedings against Alejandro and Cynthia Reynoso that the Note Receivable with a face value of $242,000 from the Reynosos is not owed to the Debtor. At the time of the origination of the Notes Receivable at the end of 2003 substantial sums were owed by Alejandro Reynoso and Cynthia Reynoso and reflected on the books and records of the Debtor as receivables from them. Please identify each and every fact which may tend to indicate that Alejandro Reynoso and Cynthia Reynoso do not owe the Debtor the amounts reflected in their Promissory Note. Provide all documents and evidence which indicates in any way, directly or indirectly, that the Reynosos do not owe the amount due pursuant to the terms of the Promissory Note.

<u>Response</u>

Since the goal is an accurate disclosure statement and since a hearing on the matter is set for November 8, 2007, I request that you respond to these inquiries by next week. Of course, it is important given the time frames that I know if you will respond in good faith to my inquiries. If not, I will need to move for 2004 examinations in the near future. Therefore, please let me know by the end of this week if you do or do not intend to respond. If I receive no response, I will have no other choice but to seek the

Mr. Dale Ulrich
Mr. Terry A. Dake
Mr. William R. Richardson
October 22, 2007
Page Fourteen

---

2004 examinations necessary to get the answers to my inquiries, but I truly hope you see the wisdom in responding in a timely manner instead of going forward with additional motions and examinations.

Thank you for your consideration.

Sincerely,

Thomas L. Kummer

ThomasL.Kummer